## The United States, Plaintiffs in error, *v.* Gordon D. Boyd, and others, Defendants in error.

The United States proceeded on the official bond of Boyd, a Receiver of Public Moneys for the district of lands subject to sale at Columbus, Mississippi. Boyd had been appointed Receiver for four years, from the 27th December, 1836 ; and the bond was for the faithful performance of the duties of his office, and was executed on the 15th of June, 1837. The breaches assigned by the United States were, 1st. That after the 27th day of December, 1836, Boyd received, in his official capacity, fifty-nine thousand six hundred and twenty-two dollars, which he failed to pay over to the United States, as he was bound to do by law. 2d. That Boyd, on the 27th day of December, 1836, and at divers days between that and the 30th of September, 1837, received fifty-nine thousand six hundred and twenty-two dollars, as Receiver, which sum remained in his hands on the 30th day of September, 1837 ; and that he failed to pay the same, pursuant to his instructions from the Secretary of the Treasury, and the duties of his office, &c.

The case of Farrar and Brown *v.* The United States, 5 Peters, 374, cited and affirmed.

It matters not at what time the moneys had been received by the officer, if received after his appointment. They were held in trust for the United States, and so continued to be held at and after the date of the bond ; and the sureties are liable to the United States.

The liability of a surety is not to extend, by implication, beyond the terms of his contract. This undertaking is to receive a strict interpretation, and not to extend beyond the fair scope of its terms.

By the revised Code of Mississippi, 614, any number of breaches may be assigned ; and when a demurrer shall be joined in any action, no defect in the pleadings shall be regarded by the Court, unless specially alleged as causes of demurrer. A case having come to the Supreme Court, by writ of error from the District of Mississippi, the modes of proceeding in that state govern the pleadings.

The case having been brought up from the Circuit Court of Mississippi, on a writ of error, and the judgment of the Circuit Court, on the demurrer, in favour of the defendant, and against the United States, having been reversed by the Supreme Court, the case will be in the Circuit Court as if the demurrer had been overruled ; and will be subject to additional pleadings as an amendment of the present pleadings, according to the rules and practice of the Circuit Court, and on such terms as it may impose.

IN error to the Circuit Court of the United States for the Southern District of Mississippi.

Gordon D. Boyd was duly appointed a Receiver of Public Moneys for the district of lands subject to sale at Columbus, in

the state of Mississippi, for the term of four years from the 27th day of December, 1836. On the 15th of June, 1837, he gave a bond in the penal sum of two hundred thousand dollars, jointly and severally with Samuel Rossdale and others, the defendants in error in the present suit. The condition of the bond was, that, whereas the President of the United States had, pursuant to law, appointed him, the said Boyd, receiver as aforesaid, for the term of four years, from the 27th of December, 1836, that therefore, " if the said Boyd shall faithfully execute and discharge the duties of his office, then the above obligation to be void, and of none effect, otherwise it shall abide and remain in full force and virtue."

At May term, 1838, a suit was instituted on this bond, by the United States, in the Circuit Court for the Southern District of Mississippi, against the obligors, being the present defendants in error, to recover the penalty thereof. The defendants craved oyer of the bond, and afterwards of the condition, and subsequently, pleaded that the plaintiffs ought not to maintain their action, because " the said Boyd did, from time to time, and at all times after making of the said bond, and the condition thereof, well, and truly observe, perform, fulfil, and keep the condition of said bond, by faithfully executing and discharging the duties of his office, according to the tenor and effect, true intent and meaning of the said condition."

At November term, 1839, the United States filed their amended replication, in which they said that they ought not to be barred from maintaining their action, because the said Boyd had not performed the condition of the said bond, and two breaches thereof were assigned.

1st. That " the said Boyd, after the 27th of December, 1836, and while he was Receiver, and as such Receiver, received of the public moneys, large sums, viz., fifty-nine thousand six hundred and twenty-two dollars and sixty cents, which said sum, he then and there wholly failed, neglected, and refused to pay over to the said plaintiffs, pursuant to his instruction from the Secretary of the Treasury, as he was bound to do by law, and the duty of his said office of Receiver."

2d. That " the said Boyd, after the 27th of December, 1836, and on divers days and times, between that day and the 30th of

[The United States v. Boyd et al.]

·September, 1837, while he was Receiver, and as such Receiver, received divers sums of the public moneys, amounting in the whole to fifty-nine thousand six hundred and twenty-two dollars and sixty cents, and that the said sum remained in the hands of the said Boyd, as Receiver, on the 30th of September, 1837; and the said Boyd then and there wholly failed, neglected, and refused to pay the same over to the United States, pursuant to his instructions from the Secretary of the Treasury, as he was bound to do by law, and the duty of his office.

To this replication, the defendants demurred, for the following causes:

1st. The first breach does not state the time at which Boyd, as Receiver, received the said money after his appointment, whether before or after the date of the bond.

2d. The first breach does not state that Boyd neglected to pay over any moneys received by him, as Receiver, after the date of the bond.

3d. The second breach does not state any time at which Boyd, as Receiver, received the said money.

4th. The second breach does not state that Boyd, as Receiver, neglected to pay over any moneys received by him, as Receiver, after the date of the bond.

5th. That the replication is otherwise insufficient.

The United States joined in the demurrer, and the same was sustained by the Court, and judgment thereupon entered for the defendants. The United States prosecuted this writ of error.

. The case was argued by Mr. Gilpin, Attorney General for the United States. Mr. Davis, in behalf of Mr. Cocke, submitted a printed argument for the defendants.

For the United States, Mr. Gilpin contended, that the breaches of the condition of the bond, by the principal obligor, are well and sufficiently set forth in the replication; and that the demurrer ought not to have been sustained.

. Mr. Gilpin, Attorney General, for the United States.

On the 27th of December, 1836, the defendant, Boyd, was appointed a Receiver of Public Moneys, at Columbus, in Mississippi, for four years. On the 15th of June, 1837, and while his

term of office was unexpired, the bond on which the present
suit was brought, was given by him and the other defendants in
error, in the penal sum of two hundred thousand dollars, with
the condition that he "should faithfully discharge the duties of
his office," of Receiver of Public Moneys, and stating the term
to be "four years from the 27th of December, 1836."

On the first establishment of the government, in 1789, the
general duty of "superintending the collection of the revenue,"
and of "executing such services relating to the sale of the public
lands, as might be required by law," (1 Story's Laws, 46,) was
devolved on the Secretary of the Treasury. The earliest gen-
eral provision, (1 Story's Laws, 42,) regulating, especially, the
payment of moneys on the purchase of public lands, was that
of the 18th of May, 1796, and by that it was provided that the
purchaser was to pay one-half of the purchase money, within
thirty days, to the Treasurer of the United States directly, or
"to a person appointed by the President to attend at the place
of sale and receive it;" the residue was to be paid directly to the
Treasurer. On the 10th of May, 1800, (1 Story's Laws, 783,)
land offices were created at four places, Cincinnatti, Chilicothe,
Marietta, and Steubenville; and it was directed that a Receiver
of Public Moneys should be appointed at each of them, by the
President, whose duties were, to receive the purchase money
from purchasers; give receipts therefor; transmit, at designated
periods, accounts of the moneys received, to the Secretary of the
Treasury; and "within three months transmit to the Treasurer
of the United States, the moneys by them received." By the
same law, the Secretary of the Treasury was authorized to
prescribe such further regulations as to the manner of keeping
the books, and the accounts, as he might think proper. On the
25th of April, 1812, (2 Story's Laws, 1238,) the general land
office was established, and all the powers and duties of the Sec-
retary of the Treasury, relative to the public lands, were de-
volved upon the Commissioner; to whom also, all returns from
the land offices were directed to be made, and by whom all
accounts from them were to be settled. On the 24th of April,
1820, (3 Story's Laws, 1774,) the law was passed, requiring the
whole purchase money to be paid on the day of sale, to the
Receiver, or to the Treasurer of the United States. On the 3d

[The United States *v.* Boyd et al.]

of March, 1833, (4 Story's Laws, 2349,) a law was passed which formed a certain portion of the lands in the state of Mississippi, purchased not long before from the Choctaws, into a land district called the Northeastern District; and the President was directed to establish a land office at some convenient place therein, which he might designate; and to appoint a Receiver of Public Moneys, for that office, who was to give bond according to law, and who was to perform similar duties, and be in all respects governed by the laws of the United States, providing for the sale of the public lands. This office was established at Columbus, and went into operation on the 1st of May, 1833. On the 4th of July, 1836, (4 Story's Laws, 2499,) the general land office was reorganized; and it was provided that the Receivers should make to the Secretary of the Treasury monthly returns of the moneys received by them, and should pay over such money, pursuant to his instructions.

The various instructions that had been from time to time issued in regard to the various duties of the officers of the land office, were condensed, in the year 1831, into a circular issued by the Secretary of the Treasury; which, so far as it relates to the payment of public moneys collected by the Receivers, is as follows, (2 Birchard's Land Documents, 443:) "When the public money in the hands of a Receiver, at the end of any month, exceeds the sum of ten thousand dollars, it should be deposited without delay. But it must not be retained, under any circumstances, in contravention of the provisions of the act of 10th May, 1800, which require that the moneys received by the Receivers, shall be transmitted within three months, to the Treasurer of the United States, as they will thereby render themselves and their sureties liable under their official bonds. It is essential that the public moneys in the possession of the Receivers, should be deposited at the above intervals." These instructions, which were issued by the Secretary of the Treasury, through the Commissioner of the General Land Office, have formed, ever since, the well known guide of Receivers of Public Moneys throughout the United States.

It will thus be seen that, for a Receiver of Public Moneys "faithfully to execute and discharge the duties of his office," he must pay over "the public money in his hands, exceeding ten thousand

dollars, once a month," and deposit " all the public moneys in his possession" once in three months. It is not possible that the duties required for the faithful execution and discharge of an office can be more exactly defined.

On the 30th of September, 1837, the defendant, Boyd, resigned his office, having at that time in his hands, not paid over, or deposited, as required by the above regulation, the sum of fifty-nine thousand six hundred and twenty-two dollars and sixty cents, received during the term designated in the bond. This balance, though repeatedly called upon, he has ever since refused to pay over, or deposit; and at May term, 1838, a suit was instituted against him and his sureties, on their official bond, to recover it. The defendants pleaded performance, and alleged that Boyd had at all times, after the making of the bond, faithfully executed and discharged the duties of his office. The United States, in an amended replication filed at November term, 1839, replied that he had not performed the condition of his bond, and assigned as breaches of it:

1. That while he was Receiver, that is, during the term stated in the bond, and up to the 30th September, 1837, he had received this amount of public money, and had then and there refused to pay it over to the United States.

2. That between the time of his appointment and the 30th of September, he had received this amount of public money; and that it remained in his hands on the 30th of September, and that he had then and there refused to pay it over to the United States.

To this replication the defendants have demurred, substantially, but on a single ground. It is, that it does not appear that the public money, which he has not paid over, was received by him after the date of the bond; and it is alleged, that if the money in question was collected by him before that period, the sureties are not answerable for it; even though it was collected during the term for which the bond prescribed his official duties; and though it was "in his hands," and remained "in his possession" up to the 30th of September, when he retired from office.

It will scarcely be denied that, so far as the Receiver himself was concerned, it was his duty to pay over and deposit this money, at whatever time it was received, as completely after the

[The United States v. Boyd et al.]

15th of June as it was before. It is his duty, from the nature of his office, which requires him to pay over and deposit all moneys, whenever received, during his term. It is his duty, from the express words of the law, and the regulations of the Treasury Department; they make no distinction in regard to the money received; all is to be paid over; if it was so received, as to have made it a breach of duty not to pay it over before the 15th of June, this does not make it less so, to continue to withhold it after that time. It is too plain for argument, that Boyd did not faithfully perform his duty, if he neglected to pay over these moneys, after the 15th of June, whenever they first came there.

If then this was a duty of the principal; a neglect of it was a breach of the condition of the bond on his part; is there any thing which exempts the sureties from liability on account of it? What are the sureties bound for? They are bound to answer for their principal performing every duty whatever, which belonged to his office, at the time they executed the bond. This was his chief and well-known duty. They knew he had been in office for five months; they knew he must have received public moneys; they knew that the bond they gave was dated in the middle of a quarter; they knew therefore that the public moneys, thus received, must be remaining in his hands undeposited. It was, therefore, a duty which, when they signed the bond, they knew he had to perform. They could ascertain the amount of their liability at that time. They were not in any way taken by surprise. They executed the bond with a full knowledge that their principal was bound to pay over and deposit the moneys then in his hands. It is true that a surety may not be bound always to see new duties performed, which are imposed on their principal after the date of the bond; but these are not of that character. Let us suppose that this bond, executed on the 15th of June, had contained, in terms, this condition: "that the said Boyd shall faithfully perform his duty as a Receiver, by paying over and depositing all public money now in his hands;" will it be contended that the sureties would not then have been answerable? And is not this the case, where such a condition is contained in substance, when there is a condition that he shall perform every duty, and this is a well-known and prescribed

duty? The designation of a general duty, necessarily embraces the particular duty. It seems clear then, that to pay over the moneys remaining in his hands when the bond was signed, was a duty of the principal, and one which the sureties knew he was bound to perform. They are therefore answerable for a breach of it.

But it may be said that the duty was one which should have been performed before the bond was executed; that the money received before the 15th of June, should have been paid over before that day. To that it may be answered, in the first place, that such is not necessarily the fact. It does not by any means follow that there was a default, in not paying over, even though the money had been received before the date of the bond. If the sum in question was received in the last preceding month, there was nothing in the law which required it to be paid over before the date of the bond; and the demurrer admits the fact to be so, by objecting only to the want of certainty as to the receipt of the money at the day of the date of the bond. We have a right, under this demurrer, to assume that this money was all received within thirty days preceding the date of the bond; we can have no knowledge that such was not actually the fact; if it was so, the duty of the Receiver was to pay it over after the date of the bond, though it was received before. Or, suppose that a Receiver should collect nine thousand dollars before the date of the bond, and one thousand dollars after; the law requires him to deposit only when he has ten thousand dollars; is not the surety liable, if, when the period of deposit arrives, after the date of the bond, he fails to make it?

But, in the second place, if we admit that the money was received before the date of the bond, and that it ought to have been then paid over, does that make it less a duty to pay it over afterwards? The real and great default is in the permanent refusal to pay; a neglect to account, a failure to make report, a refusal to deposit the money at a prescribed day, may each be great improprieties and violations of official duty; but it is the final neglect to pay over the money which constitutes the great breach: and this does not become less a breach because there have been other and previous neglects.

But, in the third place, if we admit that the money was re-

ceived before the date of the bond, and ought to have been paid over before the date, the terms of the bond expressly provide for a default in this payment. Whether the proper deposit had been made was unknown to the public officers when the bond was taken; they therefore required that it should embrace the duties of Boyd during his whole term—that is from the 23d of December for four years. Such are the words of the bond— such are its voluntary obligations on the part of the sureties. There is nothing, as I have said, in the assignment of these breaches, which conflicts with the fact, that the money was collected within a period that did not require its payment to be made to the United States before the date of the bond; but if there were—if it is admitted that the money was all received on the 1st of January, 1837, is not that within the term of four years from the 23d of December, 1836; during all of which, previous to the date of the bond as well as subsequent, these sureties stipulate the Receiver's duties shall be faithfully performed? That a bond, voluntarily entered into, to guarantee the performance of all duties from a day expressly stipulated in the bond, though anterior to its date, to another day also stipulated—if the principal so long remains in office—is a legal and binding instrument, cannot be denied. And such was the case here, and such is the condition that is broken; if we take the facts of the case to be more favourable to the sureties than necessarily results from the assignment of breaches to which they demur.

If then it be alleged, that this payment ought to have been made before the date of the bond, we say; 1st. That such is not necessarily the fact. The money may have been received within a month of that date. 2d. That if it ought, it is not less an obligation on the sureties to see it subsequently paid. 3d. That the sureties, by the terms of the bond, stipulated to meet such a contingency.

Nor can the sureties relieve themselves by the allegation that there was a neglect on the part of the obligees. To say nothing of the well recognised principle that the rights of the public cannot be impaired by the neglect of its officers to require the proper settlements, or to institute suits against the principal, (The United States *v.* Kirkpatrick, 9 Wheaton, 720. The United

States v. Vanzant, 11 Wheaton, 184. The United States v. Nicholl, 12 Wheaton, 509;) yet, as the case presents itself by this demurrer, it is quite evident, that there was no neglect whatever; that, at the time the bond was signed, the money may have been received, and yet the period to account for it or to deposit had not arrived. It is, indeed, probable that the state of his account could not have been known. He was appointed in Washington, on the 27th of December; he could scarcely have commenced his official duties in Mississippi before the middle of January; his first quarterly account was to be made up to the 1st of April, and necessarily requires some time after that date for its transmission with the vouchers; the bond, sent from Washington to Mississippi, was executed there in June. It may well be doubted, therefore, even if these moneys were received before the 1st of April, whether this default could have been known before the bond was sent for execution. But it is far more probable that these moneys were received after the first of April; if so, there had been no account rendered of the receipts; none had been required by law; the sureties knew there could have been none; of course no neglect, to their prejudice, is chargeable against the United States, or their officers.

If these views are correct, the following position is established; that where a Receiver is bound by his bond to deposit moneys in his hands, received during a specified official term, it is a breach of that bond, if he neglects to deposit what was received during the time prescribed, but previous to its date; and this is especially the case, if the bond is dated after the receipt of the money but before the time of deposit prescribed by law or regulation; or if the money received actually remains in his hands at that date.

The judicial decisions of the Courts of common law, as well as of this Court, seem to establish the same position. There is nothing in the condition of this bond that the obligor cannot perform; and it is a well settled principle that if a condition can be performed, without breach of the law, it is good. Mitchell v. Raynolds, 10 Modern, 134. In the case of Arlington v. Meinch, 2 Saunders, 414, it was held that the recital was the part of the bond which governed its construction, and that the condition must be construed by it. In the case of Newman v.

Newman, 4 Maule and Sel. 66, it was held that if there were some things required in the condition which were void, this did not release the obligors from the performance of the other conditions. The principle is well established that the sureties are bound by terms of the agreement, as recited in the bond, unless some parts are illegal, and then their responsibility remains for the residue. It is their agreement that controls, and this is a matter for the Court and jury to judge of. In the case of Hassell v. Long, 2 Maule and Sel. 363, the obligor was a church-warden, holding from year to year, commencing in the month of April: on the 5th December, 1796, he gave his official bond for the faithful performance of his duties then imposed, or that might thereafter be imposed; the plaintiffs sought to charge him for duties after April, 1797, to which the surety objected, and was sustained by the Court. It was admitted that he was bound for the whole year, or term during which the bond was given; the only question was, whether a fair construction of the words of the bond extended his liability further. In the case of Nares v. Roules, 14 East, 510, a collector was appointed under an act of parliament to perform certain duties, which were to be designated by another act " to be" subsequently passed, the title of which was given; it so happened that the act thus referred to was actually passed before the date of the bond, or the law which required it, and the collector acted under it, and became a defaulter; it was held that his sureties were liable, it being evident, from the whole tenor of the bond, that it referred to the act previously passed, notwithstanding the prospective words. In the course of argument, it was said, as a thing not doubted, that the commissioners of revenue "might well take such a security that the duties that were actually collected should not be lost." In the case of Curling v. Chalklen, 3 Maule and Sel. 508, a collector of poor rates gave bond "that he should render to the churchwardens at, &c., and as often thereafter as required, a true account of the moneys so collected, &c., and of all moneys rated and not received; and pay over the moneys so by him collected and received and remaining in his hands." The collector was appointed in 1806; the bond was dated 21st July, 1810; and the appointment expired in 1814. Lord Ellenborough said, "I think it is clear, from the act of parliament,

R 2

and the condition of this bond, that it was intended to be given as a security for the faithful accounting of the principal for the time prior to that when the bond was executed, and also for the whole period of time, after the execution of the bond, during which he should continue in the office of collector." In the case of Peppin *v.* Cooper, 2 B. and A. 431, the collector of rates was appointed 22d August, 1812; he gave bond, dated 18th December, 1812, that he should from time to time, and at all times thereafter, faithfully collect, &c. Abbot, C. J., said, " I am of opinion that the condition of the bond is satisfied by the faithful collection of the rates for one year. The office of collector must be annual. I think, therefore, it was the intention of the parties that this bond should only be coextensive with the duties to be performed."

In the case of Dawes *v.* Edes, 3 Mass. 177, an administrator gave bond to render, &c., of the goods, &c., which have or shall come to his hands. It was objected by the surety that these words did not imply a retrospective meaning, but the Court said that the bond clearly covered what came into the administrator's hands before as well as after its date. In Roth *v.* Miller, 15 Ser. and Raw. 107, Judge Duncan said, " Although it may be admitted that bonds are not to be construed strictly against sureties, yet securities are as much bound, according to the true meaning of the obligation, as principals." In 4 Yates, 340, and 4 Dallas, 79, Judge Smith has laid down the true principle of construction to be, that the surety is not liable further than the true intention and meaning of the parties expressed in the instrument, and the legal construction of the words used, make him liable; but so far he is liable, and the legal construction of the words make him answerable. All who bind themselves in a bond, are equally obligors; and there are many cases in the construction of bonds, where the letter of the condition has been departed from, to carry into effect the intention of the parties. And it is a rule in the construction of all deeds, that they are to be construed most strictly against those who make them, and most favourably for those for whose benefit they are made, as every contract is. In the case of the Dedham Bank *v.* Chickering 3 Pickering, 341, the same principle is sustained. It was held there, that where the terms of the bond were general, so as to embrace the whole

period of a person being in office, they could not be restrained to a single year, although it had been customary to re-elect him from time to time. Turning to the decisions of this Court, we find in the case of Sthreshley v. The United States, 4 Cranch, 169, the Chief Justice laying down the duties of a Collector of Revenue, for which his sureties are answerable, to be first, a liability to pay over what he has collected; and, second, to answer for any neglect in collecting it. While the Court in that case refused to make the sureties answerable for outstanding duties at the time his office ceased; they held them to be answerable for the payment of all that had been collected before that time. The case of the United States v. Giles, 9 Cranch, 212, was that of a marshal, who gave bond, dated the 9th of January, 1801, well and faithfully to perform the duties of his office, but without any limitation whatever, as to the period when the obligation of the sureties was to begin. It appeared that previous to the date of his bond, the marshal had collected a sum of public money, which he had not paid over, as directed by the Treasury regulations to do; but it did not appear that any demand was made upon him, by the United States, to pay it over. The sureties contended that, as the money had been collected before the date of their bond, which, by its terms, had no relation to any duties previous to its date, it was not a breach of duty for which they were answerable. Two of the judges agreed with this view of the case; two others differed with them, and held that the sureties were liable, because the money though received before the date of the bond, was then in the marshal's hands, and not paid over; and the other two appear to have concurred on this point, though they considered the want of evidence of any demand having been made of the marshal, as sufficient to relieve him from the charge of having converted it. This case wants the essential feature of the present one; an express stipulation in the bond, of the time when the Receiver's liability is to begin; yet even there, the payment of the money, independent of the time of receipt, is regarded as a substantial duty, which, if violated, involves a breach of the condition. In the case of Walton v. The United States, 9 Wheat. 651, the Court, in speaking of the official bond of a Receiver, say that it is not an instrument given for a particular balance of money; but that it is a

security merely for the officer performing his duties in good faith. In the case of Miller v. Stewart, 9 Wheat. 680, the defendant was surety in a bond conditioned that Ustick "had faithfully discharged, and should continue to discharge the duties of his appointment," as a Collector of Internal Revenue; and it was sought to charge him with duties arising under a subsequent appointment. This the Court refused to sanction; and thus laid down the obligations of a surety: "To the extent, and in the manner, and under the circumstances pointed out in his obligation, the surety is liable, but no further. He has a right to stand upon the very terms of his contract." It is evident from the terms of the bond, that it was dated after the appointment, yet the surety voluntarily made himself liable during the whole of that appointment; and, as in the case of Hassell v. Long, the Court, though they would not extend his liability further, asserted its existence fully to that extent. In the case of the United States v. Kirkpatrick, 9 Wheat. 720, the defendant was surety in a bond dated 4th of December, 1813; the principal obligor was commissioned on the 13th of November; the Court said "the bond in question was given with express reference to this commission, and its obligatory force was, of course, confined to acts done while that commission had a legal continuance." In the case of the United States v. Nicholl, 12 Wheat. 505, the defendant was surety in a bond, dated 22d of February, 1819, for the faithful performance by Robert Swartwout, of the duties of his office of Navy Agent, which commenced on the 30th of November, 1818, and continued for four years. The Court below had charged the jury, that the defendant was not liable for a deficiency of public money reported on by the accounting officers, subsequent to the expiration of his office. On this, the Supreme Court say, that if by this "it was intended to convey the idea, that he was not responsible for money that came into Swartwout's hands while in office, but which he afterwards failed to account for and pay over, it was clearly incorrect." In the case of Farrar v. The United States, 5 Peters, 373, the plaintiff was the surety of Rector, the Surveyor General, in a bond, dated 17th of August, 1823, conditioned that he "shall faithfully discharge the duties of his office." He was appointed on the 13th of June, 1823, and had received certain public money before the date of his

bond, and some even before the date of his commission. This money he failed to pay over, and the sureties denied their liability for such failure. The Supreme Court said, "that for any sums paid to Rector, prior to the execution of his bond, there is but one ground on which the sureties could be held answerable, and that is, on the assumption that he still held the money in bank, or otherwise. If still in his hands, he was, up to that time, a bailee of the government: but upon the contrary hypothesis, he had become a defaulter, and his defence was already consummated." They go on to say, referring to the latter state of the case, that then, "if intended to cover past dereliction, the bond should have been made retrospective in its language." In the case of The United States v. Tingey, 5 Peters, 128, the question arose whether or not, a bond voluntarily entered into, might not be made by the sureties with the United States, as fully as it might be with an individual: and this Court expressly recognised the binding authority of such a contract on the sureties.

From these decided cases it clearly results, that where a surety voluntarily enters into a bond, he is bound by its conditions as they are to be deduced from the recitals of the instrument itself; that these conditions may be retrospective in their character, and apply to a series of transactions commencing before the date of the bond, if such is the agreement therein; that the agreement to pay over public moneys applies equally to those received before, as after the date of the bond, (even without a retrospective clause,) where they remain in hand at the date of the bond.

In the present case, the record establishes the facts necessary to bring it within these principles. The bond is voluntary; it embraces in terms all acts of the principal as far back as the 23d of December; the money was in his hands at the date of the bond.

An objection of a different character was taken by the counsel for the defendant in error, but not pressed in the argument. It is to the form of the replication, which, it is alleged, "does not fairly respond to the plea;" but is "evasive and uncertain." An examination of the pleadings will show that this objection cannot be sustained; but this is unnecessary; for if it were valid, it was not assigned as a special cause of demurrer, without which, by the

law and practice of Mississippi, it could not be noticed by the Court. Revised Code of Miss. 614.

. On the whole case, therefore, it is submitted that the. Court below erred in sustaining the demurrer, and that the liability of the sureties ought to have been enforced.

Mr. Cocke, for the defendant.

This was an action of debt, brought by the plaintiffs in error against the defendants, in the Circuit Court of the United States for the District of Mississippi. It is founded on the official bond given by Gordon D. Boyd, as Receiver of Public Moneys of the United States, for the district of lands subject to sale at Columbus, in the state of Mississippi.

By an inspection of the bond, it appears that the said Gordon D. Boyd was appointed Receiver on the 27th day of December, 1836; but that he and his sureties did not execute the bond sued on, until the 15th day of June, 1837; and that the bond was not approved at the Treasury Department of the United States until the 9th day of October, 1837.

The sureties, the present defendants, craved oyer of the bond and the condition; and the condition being read to them in these words: "The condition of the foregoing obligation is such, that whereas the President of the United States hath, pursuant to law, appointed the said Gordon D. Boyd Receiver of Public Moneys for the district of lands subject to sale at Columbus, in the state of Mississippi, for the term of four years from the 27th day of December, 1836: Now, therefore, if the said Gordon D. Boyd shall faithfully execute and discharge the duties of his office, then the above obligation to be void and of none effect; otherwise, it shall abide and remain in full force and virtue." The defendants pleaded that the said Gordon D. Boyd did, from time to time, and at all times, after the making of the said bond and condition thereof, well and truly observe, perform, fulfil, and keep the condition of the said bond, by faithfully executing and discharging the duties of his office, according to the tenor and effect, true intent and meaning of the condition of the said bond.

To this plea the plaintiffs replied, and assigned two breaches of the condition to the said bond, to wit:

1st That the said Gordon D. Boyd did not well and truly

keep and perform the condition of the said bond declared on, but broke the same in this, to wit: that the said Gordon D. Boyd, after the said 27th day of December, 1836, and while he was Receiver of Public Moneys for the district of lands subject to sale at Columbus, in the state of Mississippi, and as such Receiver, received of the public moneys of the United States divers large sums of money, amounting in the whole to a large sum of money, to wit: to the sum of fifty-nine thousand six hundred and twenty-two dollars and sixty cents, at the district aforesaid; which said sum of fifty-nine thousand six hundred and twenty-two dollars and sixty cents, the said Gordon D. Boyd then and there wholly failed, neglected, and refused to pay over to the plaintiffs, pursuant to his instructions from the Secretary of the Treasury of the United States, as he was bound to do by law, and the duties of his said office of Receiver.

2d. That the said Gordon D. Boyd, after the 27th day of December, 1836, and on divers days and times between that day and the 30th of September, 1837, and while he was Receiver of Public Moneys for the district of land subject to sale at Columbus, in the state of Mississippi, and as such Receiver, received divers large sums of the public money of the United States, amounting in the whole to a large sum of money, to wit: to the sum of fifty-nine thousand six hundred and twenty-two dollars and sixty cents, at the district aforesaid; and that the said sum of fifty-nine thousand six hundred and twenty-two dollars and sixty cents, remained in the hands of the said Gordon D. Boyd, as Receiver as aforesaid, on the 30th day of September, 1837, to wit: at the district aforesaid, and that the said Gordon D. Boyd then and there wholly failed, neglected, and refused to pay the same over to the plaintiffs, pursuant to his instructions from the Secretary of the Treasury of the United States, as he was bound to do by law, and the duties of his office.

To this replication the defendants demurred; and, for causes of demurrer, stated the following, to wit:

1st. The first breach does not state, or show the time at which the sum of money mentioned was received by the said Gordon D. Boyd, as Receiver: whether the same was received before or after the day of the date of the said bond.

2d. The first breach does not state or show that the said Gordon

D. Boyd hath failed, neglected, or refused to pay over to the plaintiffs, any moneys collected by him at any time after the day of the date of the said bond.

3d. The second breach assigned, does not state or show any time at which the said Gordon D. Boyd received the said sum of money mentioned in the said second breach.

4th. The said second breach does not state or show that the said Gordon D. Boyd neglected, failed, or refused to pay over any moneys collected by him as such Receiver, at any time after the day of the date of said bond.

To this there was joinder in demurrer; on which the Circuit Court, after argument, gave judgment for the defendants. To reverse this judgment, the plaintiffs have prosecuted their writ of error to the Supreme Court of the United States. To sustain the judgment of the Court below, on the part of the defendants, it is insisted:

1st. That it is the duty of the Court to look into the contract itself; the construction of it is a question of law, and the Court will construe it with a view to the real intention of the parties to it. It will be found that the contract was entered into on the 15th of June, 1837, and approved on the 9th of October, 1837; that it is prospective in its terms. It is an executory contract, both in its terms and legal effect. Its object was to secure the faithful discharge of duties thereafter to be performed. If, at the time of the execution of the bond, on the 15th of June, 1837, the sureties had been told that Boyd had already become defaulter to the government, to the amount of fifty-nine thousand six hundred and twenty-two dollars and sixty cents, and they had then been asked to become responsible for that defalcation; it would have involved very different considerations than those of an undertaking that he should thereafter execute and discharge the duties of his office.

In the matter of Rector, in the case of Farrar and Brown v. The United States, 5 Peters, 373, this Court well say: "If the contract is entered into to cover a past dereliction, the bond should have been made retrospective in its language. The securities have not undertaken against his past misconduct.

In the case of The United States v. Giles et al., 9 Cranch Rep. 212, the Court say: "If the marshal, before the date of his

official bond, receive money upon an execution due to the United States, with orders from the Comptroller to pay it into the Bank of the United States, which he neglects to do ; the sureties in his official bond, executed afterwards, are not liable therefor upon the bond, although the money remained in the marshal's hands after the execution of the bond."

This case, on principle, covers all the grounds upon which Boyd's securities are attempted to be inculpated.

So far as the proceedings in this action upon the bond are concerned, there is, perhaps, no difference, in point of law, between the liability of Boyd and the liability of the sureties. It may be said, that it is the contract of both, and binds both, or neither.   United States v. Orr's adm's, 8 Peters's Rep. 399.

The United States are, however, not without remedy ; for there can be no doubt but that an action in another form would lie against Boyd for the amount received, however or whensoever received.   Ibid.

The Supreme Court may now be informed that, for the amount of his deialcation, Boyd, in an action of assumpsit, at the suit of the United States against him, for so much money had and received to the use of the United States, has confessed a judgment in the Court below.   But be this as it may, it cannot be true that the sureties can be inculpated for any defalcation that may have occurred prior to their having become sureties. The contract of a surety is to be construed strictly, both in law and in equity ; and his liability is not to be extended by implication beyond the terms of his contract.   Miller v. Stuart et al., 9 Wheat. 680.

To the extent, and in the manner pointed out in his obligation, is the surety bound, and no further ; and he has the right to stand upon the very terms of his contract.   Ibid.

2d. In a case like the present, the pleading justly commands our attention. The replication holds the important position of the declaration, and should state the facts upon which the plaintiffs rely for a recovery, with the same certainty as would be required in a declaration ; a certainty at least equal to the legal effect of the contract declared on.   It should show the matter of right, in point of law, on which the plaintiffs seek a recovery. It should support the declaration, and be at the same time

responsive to the plea.   It should either confess and avoid the plea, stating distinctly the matter of avoidance; or it should deny the plea, so that the defendants could take issue on the matter of fact on which the plaintiffs' legal right for a recovery depends.

Based upon the position that the defendants' liabilities were, by the terms and legal effects of their contract, limited to the execution and discharge of the official duties from and after the 15th June, 1837, they tendered to the plaintiffs the issue that Boyd had from time to time, and at all times after the giving of the bond, well and truly kept and performed, the condition of it.

It is manifest that the plaintiffs, in their replication, have attempted to dodge this question.

They have failed, and refused fairly to respond to the plea; and from any thing appearing in the replication, it is as reasonable to suppose that the money mentioned, was received between the 27th day of December, 1836, and the 15th of June, 1837, as it is to suppose that the money was received after the 15th of June, 1837.

The replication is, therefore, obviously evasive and uncertain; and fails to set forth such facts under the contract as, in point of law, entitle the plaintiffs to recover.

The Court below was assuredly right in sustaining the demurrer, and this Court will affirm that decision.

Mr. Justice CATRON delivered the opinion of the Court.

This was an action of debt brought upon a bond with the following recital and condition, dated June 15th, 1837:

" The condition of the foregoing obligation is such, that whereas the President of the United States hath, pursuant to law, appointed the said Gordon D. Boyd, Receiver of Public Moneys for the district of lands subject to sale at Columbus, in the state of Mississippi, for the term of four years from the 27th day of December, 1836.

" Now, therefore, if the said Gordon D. Boyd shall faithfully execute and discharge the duties of his office, then the above obligation to be void and of none effect, otherwise it shall abide and remain in full force and virtue."

The defendants craved oyer of the bond, condition, &c.; and pleaded performance of the condition.

By a replication, the defendants assigned two breaches.

1. That said Boyd, after the 27th day of December, 1836, received, in his official capacity. fifty-nine thousand six hundred and twenty-two dollars, which he failed to pay over to the United States, as he was bound to do, by law.

2. That said Boyd on the 27th day of December, 1836, and at divers days between that day and the 30th day of September, 1837, received fifty-nine thousand six hundred and twenty-two dollars as Receiver, which sum remained in his hands on the 30th day of September, 1837; and that he failed to pay the same pursuant to his instructions from the Secretary of the Treasury, as he was bound to do by law, and the duties of his office.

To this replication the defendants demurred; and the Court below sustained the demurrer.

The first question arising on the pleadings is, whether the sureties of Boyd are bound for defalcations between the 27th of December, 1836, the date of the appointment, and the 15th day of June, 1837, the date of the bond.

The condition of the bond is prospective, and in its last clause does not differ in effect from that passed on in the case of Farrar and Brown v. The United States, in 5 Peters, 374. 389. In that case, William Rector had been appointed Surveyor of Public Lands, and given bond with sureties, conditioned, "If the said William Rector shall faithfully execute and discharge the duties of his office, then said bond to be void," &c.

Rector had been appointed and commissioned as Surveyor on the 20th February, 1823. The bond bore date the 7th day of August, 1823. The prominent question presented on the trial was, whether the sureties of Rector were liable for moneys received by him as surveyor, and appropriated to his own use, after his appointment, and before the execution of the bond; on which the Court held, that the sureties could only be made answerable for moneys in Rector's hands at the date of the bond; which were held by him in his official capacity, in trust for the government, and not for moneys previously appropriated to his own use. Say the Court, "If intended to cover past derelic-

tion, the bond should have been made retrospective in its language. The sureties have not undertaken against his past misconduct."

But the failure of the Receiver to account, and pay quarterly, as prescribed by the rules of the Treasury Department; or monthly, if the sum of ten thousand dollars had been received during any one month, was no legal defalcation of which the sureties can avail themselves. Laches are not imputable to the government. The regulations requiring settlements to be made by its officers at short periods are designed for the protection of the government, and merely directory to the officers, and form no part of the contract. Such is the settled doctrine of this Court, as holden in The United States *v.* Kirkpatrick, 9 Weaton. The United States *v.* Vanzant, 11 Wheaton; and The United States *v.* Nicholl, 12 Wheaton, 509.

It follows, the averment in the replication, that Boyd, from the 27th of December, 1836, to the 30th of September, 1837, had received on behalf of the United States, the sum of fifty-nine thousand six hundred and twenty-two dollars. which sum, at the last date, remained in his hands, and for which he then failed to account, as bound to do by law, and the duties of his office, is a good breach of the condition, and well assigned; it matters not at what time the moneys had been received, if after the appointment they were held by the officer in trust for the United States, and so continued to be held, at, and after, the date of the bond. That they were so holden at the end of the third quarter of 1837, is admitted by the demurrer.

It is insisted on behalf of the United States, that aside from the foregoing considerations, the sureties are bound equally with the principal in the bond, on the ground that the condition, on settled legal principles, and by implication, is retrospective, and covers all defaults of the officer, from the date of the commission; because it is recited, and part of the obligation, that Boyd had been appointed Receiver for four years from the 27th day of December, 1836. We have with much care considered this position, and think it cannot be sustained. This Court held, in Miller *v.* Stuart, 9 Wheaton, 702, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract; that his undertaking is to receive a strict interpretation;

and not to extend beyond the fair scope of its terms; and that the whole series of authorities proceeded on this ground. The principal ones relied on in that case have been relied on in the present; and we think the principles settled by them preclude the Court from maintaining that the sureties are liable by implication, contrary to the plain prospective obligation of the bond: "that the said Boyd shall faithfully execute and discharge the duties of his office." In the language of the Court, in Farrar and Brown *v.* The United States: "If intended to cover past dereliction, the bond should have been made retrospective in its language."

Some difficulty has been presented in regard to the form of the replication, testing it by the common law principles of pleading. It avers several breaches. The cause, however, comes by writ of error from the district of Mississippi; and the modes of proceeding of that state govern the pleadings. By the act of 1822, sec. 2, found in the Revised Code of Mississippi, 614, any number of breaches may be assigned; and by sec. 6, when a demurrer shall be joined, in any action, no defect in the pleadings shall be regarded by the Court, unless specially alleged in the demurrer, as causes thereof. That several breaches had been assigned, is not alleged as a special cause of demurrer, and therefore could not have been noticed by the Court, had no provision existed justifying more breaches than one; even had such replication been contrary to the strict rules of pleading by the common law.

It is proper to remark, that when this cause is remanded to the Circuit Court for further proceedings to be had therein, it will be in the condition it would have been, had that Court overruled the demurrer; and subject to additional pleadings, or an amendment of the present ones, according to the rules and practice of the Circuit Court; and on such terms as it may impose.

We order that the judgment be reversed, the demurrer overruled; and that judgment be entered by the Circuit Court, for the penalty of the bond in favour of the United States against the defendants, to be discharged by the assessment of damages on the second breach in the replication, unless the pleadings, on leave granted, be amended, in prevention of such judgment, and assessment of damages.

s 2     27

[The United States *v.* Boyd et al.]

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to overrule the demurrer, and to enter judgment for the penalty of the bond, in favour of the plaintiff, against the defendants, to be discharged by the assessment and payment of damages on the second breach in the replication, unless the pleadings, on leave granted, be amended, in prevention of such judgment and assessment of damages.