HENDRICKS, Collector, v. SCHMIDT et al.

(Circuit Court of Appeals, Second Circuit. March 18, 1895.)

No. 40.

1. CUSTOMS DUTIES—LIEN FOR PAYMENT.
    In respect to a single consignment of goods covered by a single entry, the lien of the government for payment of the whole duties attaches to each and every part thereof; and where the whole consignment is warehoused under bond, and parts of it are fraudulently withdrawn without payment of duties, the collector is entitled to hold the remainder until the duties on the entire consignment are paid, and is not bound to surrender the same upon tender of the amount of duties payable upon that part alone.

2. SAME—PAYMENT OF DUTIES.
    To constitute a payment of duties upon any particular consignment of goods, there must be an intent, both on the part of the importers and of the collector, to apply the money to that consignment. *Held*, therefore, that where a check was given by the importers to an employé with directions to pay the duties upon a particular consignment, but he absconded with the same, and it afterwards came into the hands of the collector, and was applied by him to the payment of duties upon a different importation, this was not a payment of the duties upon the former consignment.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action at law by the plaintiffs, trading under the firm name of Charles F. Schmidt & Peters, to recover of the collector of customs of the port of New York the possession of 11 cases of champagne imported December 19, 1892, by the steamship La Champagne, subject to the payment of certain duties, with the collection of which defendant was by law charged.

The complaint alleged a tender of the duty upon such champagne to the amount of $95.92, a refusal on the part of the defendant to accept the tender, to deliver the goods, or to execute any documents whereby plaintiffs might in due course become possessed of such goods, and a conversion of the property to his own use.

Upon trial before a jury, the court directed a verdict in favor of the plaintiffs in the sum of $352, being the value of the champagne, with interest, upon which verdict judgment was subsequently entered, and defendant sued out this writ of error.

C. D. Baker, Asst. U. S. Atty., for plaintiff in error.

Benno Lewinson, for defendants in error.

Before BROWN, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

BROWN, Circuit Justice (after stating the facts). There was little, if any, dispute with regard to the facts in this case, which were substantially as follows: On December 19, 1892, plaintiffs imported, per steamer La Champagne, 1,420 cases of champagne, and gave a single bond for warehousing the same. From that time until February 18, 1893, they withdrew from the warehouse, for consumption, all except 50 cases, which were still remaining. On that day their agent presented to the storekeeper in charge of the warehouse a paper purporting to be a withdrawal delivery permit, whereby he was directed to deliver the remaining 50 cases to the plaintiffs, the permit stating that the duty had been paid. Believing the permit to be valid, the storekeeper delivered to the plaintiffs, at various times, 39 cases of the champagne, leaving 11 cases in the warehouse. Some time between that day and the 22d of June, following, the customs officers discovered that the permit upon which the 39 cases had been delivered had never been presented to the cashier of the customhouse, and that his initials and that of the naval officer had been forged by a clerk of the plaintiffs who in the meantime had absconded, and that the duty had not been paid on the 39 cases drawn out upon such fraudulent permit. Plaintiffs, on June 22d, presented a withdrawal entry and permit, and demanded the remaining 11 cases, which demand was refused until the duties were paid on the 39 cases which had been fraudulently withdrawn. Plaintiffs, protesting that the duty had already been paid, tendered a check for the sum of $95.92 in payment of the duty on 11 cases, and demanded the possession of the same. The defendant collector refused to accept the sum tendered, or to deliver the 11 cases, until the unpaid duties on the 39 cases had been paid, claiming a lien on the 11 cases for the unpaid balance of duties upon the entire consignment.

Plaintiffs then brought this action for an alleged conversion by the collector in refusing to deliver possession of the 11 cases.

1. The complaint is based upon the theory that plaintiffs were entitled to the possession of the 11 cases upon payment of the duties thereon, which amounted to $95.92. But we agree with the court below in holding that they were not entitled to a delivery of the 11 cases without also paying the duties upon the 39 cases which had been previously withdrawn under the fraudulent permit; in other words, that the lien of the government upon the whole consignment remained, and attached to every part thereof, notwithstanding the withdrawal of the 39 cases of such consignment upon which the duties had not been paid. No question arises as to the previous withdrawals, as the duties had been paid upon each of such withdrawals as it was made. If there had been different consignments, —separate entries of different classes of goods,—the lien upon one consignment would probably not have attached to the others. But in this particular each consignment covered by a single entry

is indivisible, and the lien upon the whole attaches to each and every part thereof.

Analogous cases are those wherein it is held that a shipmaster's lien for freight attaches to every part of the consignment, notwithstanding the delivery to the consignee of a portion of the consignment, although, if the goods of the same owner are sent under different contracts, with a different terminus in each case, no lien attaches for freight under one contract upon goods shipped under another. Macl. Shipp. 480; 1 Pars. Shipp. & Adm. 360; Sodergren v. Flight, cited in Hanson v. Meyer, 6 East, 622; Potts v. Railroad Co., 131 Mass. 455; Boggs v. Martin, 13 B. Mon. 239; Frothingham v. Jenkins, 1 Cal. 42; Fuller v. Bradley, 25 Pa. St. 120.

2. The case made by the complaint having been thus disposed of by the adverse ruling of the court below, plaintiffs attempted to maintain their right to recover by proving that the duties upon the 50 cases remaining in warehouse February 18, 1893, had in fact been paid, and that the amount tendered on June 22d, if accepted, would have been a double payment upon the 11 cases. The facts established by them were substantially as follows:

On February 18, plaintiffs made a check of which the following is a copy:

"No. 20,925.                                    New York, 2/18, 1893.

"The German American Bank: Pay to the order of collector of customs, for duty, eight hundred and fifty-four 00/100 dollars.

"Charles F. Schmidt & Peters,

"$854.00/100.                          By Heinrich Imhorst, Atty."

This check was intended for the payment of the duties upon the 50 cases, as well as for other importations, and was given to a boy to take to the customhouse, to obtain the usual permit for the withdrawal of the champagne. The boy absconded, and the check was subsequently returned as paid, in the usual course of business. There is some uncertainty as to what was done with the check after its delivery to the employé; but it appears to have been received at the customhouse, through other parties than the plaintiffs, in payment of duties upon a wholly different importation, and that the collector took it without notice, except as such notice may appear upon the face of the check, that it was to be applied to any specific purpose.

From this statement of facts, it is entirely clear that there was no actual payment of duties upon this consignment which would render the collector chargeable with a tortious conversion, upon his refusal to deliver the champagne. To constitute a payment upon that consignment, there must have been an intent on the part of the plaintiffs to pay the duties upon such consignment, and a corresponding intent upon the part of the collector to apply that payment upon the same consignment. Granting that the plaintiffs had this intent in drawing the check, no such intent was ever conveyed to the collector. Plaintiffs intrusted the check to an employé, with instructions to pay the duty upon the 50 cases, and thereby made him their agent for that purpose. Exactly what he did with the

check does not appear, but it does clearly appear that it was never made use of for that purpose; that the collector, when he received it, was not informed that it was not intended for duties upon that importation; and that he in fact applied it to a different importation. Under such circumstances, there was obviously no such meeting of minds as constituted an agreement on one part to pay the duties, and on the other part to receive the money for that purpose.

Hence it is quite clear that the plaintiffs mistook their remedy, and, if they have any cause of action at all, it is against the collector for a conversion of the check, and not for a conversion of the champagne. The title to the champagne would not pass, freed of the lien, until the duties had been actually paid, and the money received by the collector, with intent to apply it to that purpose.

The judgment of the circuit court must therefore be reversed, and a new trial granted.