**UNITED STATES v. ANCHOR WARE-HOUSES, Inc., et al.***

No. 405.

Circuit Court of Appeals, Second Circuit.

July 26, 1937.

Otto B. Schmidt, of New York City, for appellant Fidelity & Casualty Co.

Lamar Hardy, U. S. Atty., of New York City (Richard Delafield, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellant is the surety on a warehouse bond in the sum of $10,000 given to the United States as obligee by Anchor

*Writ of certiorari denied 58 S.Ct. 282, 82 L.Ed. —.

Warehouses, Inc., in accordance with the requirements of section 2961, R.S., as the owner of premises in New York used for the warehousing of imported merchandise.

The now pertinent portion of the condition of the bond is that if Anchor Warehouses, Inc., "shall hold the United States * * * harmless from or on account of any risk, loss or expense, of any kind or description, connected with or arising from the deposit or keeping or transferring of imported merchandise, * * * and shall not remove nor suffer to be removed any goods, wares, or merchandise from said warehouse without lawful permit * * * then this obligation to be void; otherwise to be and remain in full force and effect."

It appeared that in July, 1921, twelve cases of imported crude opium were delivered to Anchor Warehouses, Inc., after having been passed and released by the Appraiser's Stores for such delivery. They were placed in the bonded portion of the warehouse in charge of one Ettinger, a government storekeeper, and on January 6, 1922, the duty on this opium was liquidated in the sum of $4,925.25. On January 4, 1922, eight more cases of imported crude opium were similarly released and delivered to Anchor Warehouses, Inc., where they were also placed in bond in charge of Ettinger. The duty on this opium was on that day liquidated in the sum of $3,582.75. One Themus Pavlon, the importer of all this opium, executed and delivered to the government an approved bond conditioned for the payment of these duties which, however, have not as yet been paid.

It further appeared that, with the connivance of Ettinger and without any permit, all these cases of opium were taken to a part of the warehouse not bonded and there the opium was taken out of the cases and eventually surreptitiously removed from the warehouse without permit. The cases, sealed with their original seals which had been kept intact, and filled with bags of bricks, stones, and like material which weighed the same as had the opium, were later exported under permit to Cuba. But the fraud was discovered and one result of its discovery is this suit, brought in 1934, to recover for the government's loss occasioned by the unlawful abstraction of the opium from the bonded warehouse.

The appellant's contention that the bond in suit does not cover such a loss is completely answered by the terms of the bond above quoted. While we agree that as a statutory bond given to comply with the provisions of section 2961, R.S., to fulfill a condition precedent to engagement in the business of a bonded warehouse, it must be construed in such a way that it is kept fairly within the intent and purpose of the statute, United States v. Boyd et al., 15 Pet. 187, 10 L.Ed. 706, reference to the terms of the statute shows that the condition of the bond as quoted falls clearly within the scope of the statute.

We think it plain also that the government has proved that it suffered a loss connected with or arising from the deposit or keeping of the opium in the bonded warehouse. It had a lien on the opium for the payment of the duty. Hendricks v. Schmidt (C.C.A.) 68 F. 425. It lost that when the opium was removed from the bonded warehouse. That it may at one time have had additional security for the payment of the duties by virtue of the importer's bond is wholly immaterial since the duties have not been paid. A loss within the coverage of the bond in suit was shown and the remaining question relates to the amount of recovery.

The court directed a verdict for the plaintiff for the amount of the duties as liquidated plus interest from April 6, 1922, the date on or before which the last of the opium had been unlawfully removed, making in all $15,500. The amount recovered might be the principal sum of the bond plus interest, for it was a New York bond conditioned for the payment of money upon which on breach shown damages may be recovered not exceeding the penal sum, "with interest thereupon from the time when the defendant made default in the performance of the condition." Section 160 of the New York Civil Practice Act. The New York law controls. Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206.

This appellant, the surety on the bond, is chargeable under New York law, however, not with interest from the time of the principal's default, but only with interest from the time the surety "could have safely paid the sum providing he then unjustly withholds it." Tuzzeo v. American Bonding Co., 226 N.Y. 171, 123 N.E. 142. The appellant was not in default until demand and

wrongful refusal to pay. Maryland Casualty Co. v. Sparks (C.C.A.) 76 F.(2d) 929; London & Lancashire Indemnity v. Smoot, 52 App.D.C. 378, 287 F. 952; Maryland Casualty Co. v. United States (C.C.A.) 76 F.(2d) 626. No demand and refusal before this suit was brought was shown, and consequently interest is recoverable only from the date of the commencement of the action. Globe Indemnity Co. v. Southern Pacific Co. (C.C.A.) 30 F.(2d) 580.

The judgment is reversed, unless the plaintiff shall, within fifteen days, file a stipulation to reduce the judgment to $8,508 plus interest from the date this suit was brought, in which event the plaintiff shall have judgment for the reduced amount.