THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* WILLIAM LINN AND OTHERS.

A plaintiff may, in an action in form *ex delicto* against several defendants, enter a *nolle prosequi* against one of them. But in actions in form *ex contractu,* unless the defence be merely in the personal discharge of one of the defendants, a *nolle prosequi* cannot be entered as to one defendant without discharging the other.

*Qu.* Whether a plea which sets up new matter and concludes "to the country" is good.

A plea alleging merely that seals were affixed to a bond without the consent of the defendant, without also alleging that it was done with the knowledge, or by the authority or direction of the plaintiffs, is not sufficient.

A plea, which has on the face of it two intendments, ought to be construed most strongly against the party who pleads it.

A party who claims under an instrument which appears on its face to have been altered, is bound to explain the alteration; but not so, when the alteration is averred by the opposite party, and it does not appear upon the face of the instrument.

Where the plea is bad and the demurrer is to the plea, the court, having the whole record before them, will go back to the first error.

Where the date of a surety bond is subsequent to the appointment of the principal to office, the declaration should allege that the money collected by the principal remained in his hands at the time when the surety bond was executed.

THIS case came up by writ of error from the Circuit Court of the United States for the district of Illinois, and is a sequel to the case between the same parties reported in 15 Peters, 291, *et seq.* The circumstances are sufficiently set forth in the opinion of the court.

*Legaré,* the attorney-general, for the United States.

*Coxe,* for the defendants.

Mr. Justice THOMPSON delivered the opinion of the court.

This case comes up on a writ of error from the Circuit Court of the United States for the district of Illinois. The writ or summons issued in the cause purports to be in a plea of debt for one hundred thousand dollars. And the declaration contains three counts upon the following instrument, which upon oyer craved by the defendants is set out upon the record.

"Know all men by these presents, that we, William Linn, David B. Waterman, Lemuel Lee, James M. Duncan, John Hall, William Walters, Asahel Lee, William L. D. Ewing, Alexander P. Field, and Joseph Duncan, are held and firmly bound unto the United States of America, in the full and just sum of one hundred thousand dollars, money of the United States, to which payment, well and truly to be made, we bind ourselves jointly and severally, our joint and several heirs, executors, and administrators, firmly by these presents, sealed with our seals, and dated this first day of August, in the year one thousand eight hundred and thirty-six." They also crave oyer of the condition of the said supposed writing obligatory, and it is read to them in these words: "The condition of the foregoing obligation is such, that whereas the President of the United States hath, pursuant to law, appointed the said William Linn receiver of public moneys for the district, of lands subject to sale at Vandalia, in the state of Illinois, for the term of four years, from the 12th day of January, 1835, by commission bearing 12th February, 1835. Now, therefore, if the said William Linn shall faithfully execute and discharge the duties of his office, then the above obligation to be void and of none effect, otherwise it shall abide and remain in full force and virtue.

Sealed and delivered in the presence of Presley G. Pollock, as to Wm. Linn, D. B. Waterman, Lemuel Lee, J. M. Duncan, John Hall, Wm. Walters, Asahel Lee, Wm. L. D. Ewing, and A. P. Field; A. Caldwell as to Joseph Duncan.

| | | | |
|---|---|---|---|
| WILLIAM LINN, | [L. S.] | D. B. WATERMAN, | [L. S.] |
| LEMUEL LEE, | [L. S.] | J. M. DUNCAN, | [L. S.] |
| JOHN HALL, | [L. S.] | WM. WALTERS, | [L. S.] |
| ASAHEL LEE, | [L. S.] | WM. L. D. EWING, | [L. S.] |
| A. P. FIELD, | [L. S.] | JOSEPH DUNCAN, | [L. S.] |

GENERAL LAND OFFICE.

Approved, August 30, 1836. ETHAN A. BROWN."

To the first count, which purports to be debt on the bond, the defendants plead jointly *non est factum* and several other pleas not necessary here to be noticed.

To the second and third counts which are upon the same instrument, not described however as a bond, but as a certain

VOL. I.—14

instrument in writing.   To these counts the defendant, Joseph Duncan, put in the following plea:

"And the said Joseph Duncan impleaded as aforesaid, by Logan and Brown, his attorneys, comes and defends the wrong and injury, when, &c.   And as to the said second and third counts in the said plaintiffs' declaration contained, says that the said plaintiffs their said action on the said second and third counts ought not to have or maintain against him, this defendant; because, he says, that protesting that he executed the supposed written instrument declared upon in the said second and third counts of the plaintiffs' amended declaration, he says that after he had signed said instrument, and delivered it to his co-defendant, Linn, to be transmitted to the plaintiffs; and after the securities to the said written instrument had been affixed (approved) by the Hon. Nathaniel Pope, Judge of the District Court of the United States for the state of Illinois, it was, without the consent, direction, or authority of said Joseph Duncan, materially altered in this—that scrawls, by way of seals, were affixed to the signature of said Joseph Duncan to said written instrument, and to the signatures of the other parties to said written instrument, whereby the character and effect of the said written instrument, declared in the second and third counts aforesaid, was materially changed, and said instrument declared on, vitiated.

" And so said Duncan says, that the said supposed written instrument declared on in the second and third counts of plaintiffs' amended declaration, is not his act and instrument,—and of this he puts himself upon the country."

To which plea there is interposed a special demurrer, and the court gave judgment for the defendant Joseph Duncan upon the demurrer, thereby adjudging that the plea was sufficient in law to bar the plaintiffs from maintaining their action against him And issues being joined upon the pleas to the first count, the cause came on to be tried by a jury, and under the instructions of the court a verdict was found for the defendants upon the issues of fact.   Exceptions were taken to the instructions of the court to the jury.   And the correctness of such instructions is the first question presented on this writ of error.

Upon the trial, after reading the bond to the jury, the defendants called a witness, who testified in substance, that he saw the

bond after it had been signed by the obligors, in the hands of William Linn, the obligor first named therein, after it had been returned from the district judge with his certificate endorsed of the sufficiency of the sureties. That the district judge, in a note in writing, accompanying the bond, had pointed out the omission of seals to the names of the signers of the instrument; and said Linn, saying he would obviate that difficulty, took a pen, and in the presence of the witness, added scrawls, by way of seals, to each name subscribed, as makers of the instrument. Other testimony was given, under the issues of fact, which it is not material to notice.

Upon this evidence the court gave the following instruction to the jury: "If they shall find from the evidence, that after the instrument upon which the action is brought, was signed by the defendants, it was altered by William Linn, one of the defendants, without the knowledge or assent of the other defendants, by adding to the names of the defendants the scrawl seals which now appear upon the face of the instrument, and such defendants have not at any time since the alteration sanctioned it, the instrument is not the deed of such defendants, and the jury will find a verdict in their favour." And the question is, whether this instruction was in point of law correct, under the pleadings and evidence in the cause. All the defendants united in a joint plea of *non est factum,* and the proof was that the scrawls were added by Linn to his own name and to the names of the other defendants. The adding the scrawl by Linn to his own name did not vitiate the instrument as to him: he had a right to add the seal, or at least, he can have no right to set up his own act in this respect to avoid his own deed. It was therefore his deed, and the plea of *non est factum* as to him is false. And the question is, whether it is not false as to all who joined him in the plea of *non est factum.* It is laid down by Chitty in his Treatise on Pleading, that a plea which is bad in part is bad *in toto.* If therefore two defendants join in a plea, which is sufficient for one but not for the other, the plea is bad as to both. For the court cannot sever it, and say that one is guilty, and that the other is not, when they put themselves on the same terms. Chitty, 598. A plaintiff may in an action in form *ex delicto* against several defendants, enter a *nolle prosequi* as to one of them. But in

actions in form *ex contractu,* unless the defence be merely in the personal discharge of one of the defendants, a *nolle prosequi* cannot be entered, as to one defendant, without discharging the other, for the cause of action is entire and indivisible. Chitty, 599. The rule laid down by Chitty is fully sustained by the English and American decisions. In Smith *v.* Bouchin et al., 2 Strange, 993, the action was trespass and false imprisonment; plea not guilty by all, and a justification as to eight days' imprisonment. And the court held, that although the officer and jailer might have been excused, if they had pleaded severally, but having joined in the plea with others who could not justify, they had forfeited their justification. In Moors *v.* Parker and others, 3 Massachusetts, 310, the action was trespass *de bonis aspor-tatis* against several, and all join in the plea of not guilty, and also in a plea of justification. The court held that the bar set up was no justification for one of the defendants, and if several defendants join in pleading in bar, if the plea is bad as to one defendant it is bad as to all.

So in the case of Schermerhorne and others *v.* Tripp, 2 Caines, 108, which was in error from a Court of Common Pleas. The action was trespass against a justice of the peace, the constable, and the plaintiff, and all joined in a plea of not guilty. The court said, the constable having joined with the others in the plea of the general issue, they are all equally trespassers. If he had pleaded separately, he would probably have been excused; but he has now involved himself with others, and we cannot separate their fates.

It is unnecessary to multiply authorities on this point, the books are full of them, and it is a well settled and established rule in pleading. The reason is, because the plea, being entire, cannot be good in part and bad in part, an entire plea not being divisible, and consequently, if the matter jointly pleaded be insufficient as to one of the parties, it is so *in toto.* 1 Saunders, 28, n. 2, and cases there cited.

It has been suggested that this objection is waived by the following entry in the bill of exceptions: "A judgment having been obtained against Linn for the full amount of his defalcation, a judgment on this bond was not asked against him or any of the defendants. unless the jury shall find against all the defendants."

It is not perceived how this can be considered a waiver of any error. No judgment could have been given against Linn separately, the plea of *non est factum* being joint. But the plaintiffs, according to the express terms of this memorandum, did ask a verdict and judgment against all the defendants; and if from the pleadings and evidence they were entitled to judgment against all, as we think they were, there was no waiver that will justify the instructions given to the jury.

The next question arises upon the special demurrer to the plea of Joseph Duncan to the second and third counts of the declaration. This plea sets up new matter, to avoid the instrument upon which the action is founded, and concludes to the country. And it may well be questioned, whether upon the best and soundest rules of pleading it ought not to have concluded with a verification. Chitty, in his Treatise on Pleading, (1 Chitty, 590,) says it is an established rule in pleading, that whenever new matter is introduced on either side, the pleading must conclude with a verification, in order that the other party may have an opportunity of answering it. And this rule has the sanction of many adjudged cases. In the case of Service *v.* Heermance, 1 Johns. 92, the court say there is no rule in pleading, better or more universally established, than, that whenever new matter is introduced the pleading must conclude with an averment. And the reason, say the court, is obvious, because the plaintiff might otherwise be precluded from setting forth matter which would maintain his action, although the matter pleaded by the defendant might be true. And in Henderson *v.* Whitby and others, 2 Durn. and East, 576, Buller, Justice, in giving the judgment of the court, said : By the rules of pleading, whenever new matter is introduced, the other party must have an opportunity of answering it. So that the replication setting up new matter concluded properly with an averment. Numerous authorities, both in England and in the United States, might be cited in support of this rule. But there is certainly no little confusion and diversity of opinion appearing in the books with respect to the question, when the pleadings ought to conclude to the country, and when with a verification. Many of these discrepancies may grow out of rules, said, by Mr. Chitty, to have been recently established in the English courts relating to pleadings, which have not fallen under our

K

notice. We will, however, pass by the demurrer for that cause in the present case, and proceed to an examination of the special matter set up in the plea in bar of the action. If this mode of pleading be adopted, the special matter set up must, as in a special plea, be such, that if true in point of fact, it will bar the action and defeat the plaintiff's right to recover. The matter set up in this plea, when stripped of some circumlocution, is, that after he, Joseph Duncan, and the other parties to the instruments, had signed the same, it was, without his consent, direction, or authority, altered by affixing seals to their signatures. The plea does not indicate in any manner by whom the alteration was made. It does not allege that it was done with the knowledge or by the authority or direction of the plaintiffs; nor does it even deny that it was done with the knowledge of the defendant, Joseph Duncan. The plea does not contain any allegation inconsistent with the conclusion, that it was altered by a stranger, without the knowledge or consent of the plaintiffs, and if so, it would not have affected the validity of the instrument. It is said that the demurrer admits the truth of the matter set up in the plea. The demurrer admits whatever is well pleaded. But it does not admit any more, and certainly does not admit what is not pleaded at all. The demurrer then admits nothing more than that the seals were affixed after the instrument had been signed by the parties and delivered to Linn to be transmitted to the plaintiffs, and that this was done, without the consent, direction, or authority of him, the said Joseph Duncan. Is this enough to avoid the instrument and bar the recovery? It certainly is not; for the seals might have been affixed by a stranger without the knowledge or authority of the plaintiffs, and would not have affected the validity of the instrument. The plea not alleging by whom the seals were affixed, it is open to two intendments. Either that this was made by the plaintiffs, which would make the instrument void, or that it was done by a stranger, which would not invalidate it. And what is the rule of construction of such a plea? It is, that it is to be construed most strongly against the defendant. This is the rule laid down by Chitty, 1 Chitty, 578, and in which he is supported by numerous authorities. And the reason assigned for this rule of construction, is, that it is a natural presumption, that the party pleading will

state his case as favourably as he can for himself. And if he do not state it with all its legal circumstances, the case is not in fact favourable to him; and the rule of construction in such case is, that if a plea has on the face of it two intendments, it shall be taken most strongly against the defendant; that is, says he, the most unfavourable meaning shall be put upon the plea; a rule which obtains also in other pleadings; and a number of cases are put, illustrating this rule. The present plea falls directly within it. The plea not alleging by whom the seals were affixed, it is left open to intendment, that it was done either by the plaintiffs or by a stranger. In the first case, it would make the deed void; in the last, it would not vitiate it. And under the rule that has been stated, the most unfavourable meaning must be put upon the plea; that is, that which will operate most against the party pleading it. And the alteration must be presumed to have been made so as not to vitiate the instrument, if the plea will admit of such construction. Suppose the plea had concluded with a verification, and the plaintiffs had replied that the affixing the seal was done without their knowledge, consent, or authority, and this state of the case had been sustained by the proof, it would not have avoided the instrument.

But, it is said, the law imposes upon the party who claims under the instrument the burden of explaining the alteration. This is the rule undoubtedly, where the alteration appears on the face of the instrument, as an erasure, interlineation, and the like. In such case, the party having the possession of the instrument and claiming under it, ought to be called upon to explain it. It is presumed to have been done while in his possession. But, where no such *prima facie* evidence exists, there can be no good reason why this should devolve upon a party, simply because he claims under the instrument. The plea avers the alteration, and the defendant, therefore, holds the affirmative; and the general rule is, that he who holds the affirmative must prove it. And this, under the present plea, can impose no hardship on the defendant, for his affirming the fact of alteration affords a reasonable presumption that he knew by whom the alteration was made. And, in addition to this, it is a circumstance deserving considerable weight, that the defendant in his plea does not deny his having such knowledge. He avers that the seal was affixed without

his consent, direction, or authority; but he does not say it was done without his knowledge. And it is not an unreasonable inference that if he had, in his plea, disclosed by whom it was done, it would appear to have been done in a way that did not affect the validity of the instrument. There is not upon the face of this instrument any thing indicating an alteration, or casting a suspicion upon its validity, that should put the plaintiffs upon inquiry. The instrument upon its face admits it was sealed with the seals of the defendants, and purports to have been sealed and delivered, in the common conclusion of a sealed bond. So that, when the instrument came into the possession of the plaintiffs, there was nothing on the face of it to raise a suspicion against its validity. The case of Henman *v.* Dickinson, 5 Bingham, 183, has been relied upon to show that the *onus* of accounting for the alteration is thrown upon the plaintiffs. All that this case decides is, that the party who sues on an instrument which on the face of it appears to have been altered, it is for him to show that the alteration has not been improperly made. The circumstance of the alteration appearing on the face of the instrument is emphatically relied upon by the court to show that the party claiming under the instrument must account for the alteration. This was a question of evidence upon the trial, and did not arise upon the pleadings, and the report of the case does not furnish us with the pleadings. Many other cases might be cited to the same effect.

In the case of Taylor *v.* Mosely, 6 Car. and Payne, 273, the bill upon which the suit was brought appeared on its face to have been altered, and there was no evidence on either side when or by whom the alteration was made; and the question was submitted to the jury by Lord Lyndhurst, with the remark, that it lay on the plaintiff to account for the suspicious form and obvious alteration of the note, and they must judge from the inspection of the instrument, and if they thought the alteration was made after the completion of the bill, the verdict must be for the defendant. In the case now before the court, the inspection of the instrument furnishes no ground of suspicion, and from the facts stated in the plea, there must have been a considerable distance of time after the instrument was signed by Duncan before it came into the possession of the plaintiffs. The plea alleges that it was delivered to Linn, one of the defendants, to be transmitted to the

plaintiffs. But the plea does not allege that the alteration was made after the instrument came into the possession of the plain-. tiffs; and under this state of facts alleged in the plea, the *onus* of proving when and by whom altered, is more properly cast upon the defendant. We are accordingly of opinion that the plea is' bad. But it is a settled rule that, when the demurrer is to the plea, the court having the whole record before them will go back to the first error: and when the demurrer is by the plaintiff, his own pleadings must be scrutinized, and the court will notice all exceptions to the declaration that might have been taken on general demurrer. ⋅ We are accordingly thrown back on the record to examine the sufficiency of the declaration in the second and third counts.

The second count sets out the instrument as of the date of the 1st of April, 1836. That Linn's commission bears date the 12th of February, 1835, and that he was appointed receiver for four years from the 12th of January, 1835. And the count then alleges that after the making and delivering the said instrument in writing, and after the appointment of the said Linn, he entered upon the duties of his office; and that within four years from the said 12th day of January, and while he was receiver of public moneys, there came into his hands, as receiver, the sum of four millions of dollars, which it was his duty to pay over to the plaintiffs when requested, yet the said William Linn hath not, nor would he, although often requested so to do, to wit on the 2d day of April, in the year 1838, account for and pay over to the said plaintiffs the said sums of money or any part thereof, but hath wholly neglected and refused so to do. It is said this count is bad, because from the time stated in the count he might have received the money after the 12th day of January, 1835, the commencement of his office, and before the 1st day of April, 1836, when the instrument signed by the sureties bears date, and that the sureties cannot be responsible for any moneys received before they became sureties. The count alleges a demand of the money and a refusal to pay it on the 2d day of April in the year 1838, long after the defendant became surety. In the case of Farrar and Brown *v.* The United States, 5 Peters, 373, (which was an action upon a bond given for the faithful discharge of the duties of a surveyor of the public lands,) the breach assigned was,

that at the time of the execution of the bond, "there were in the hands of the surveyor large sums of money to be disbursed for the use of the United States, which he had neglected to do." And one of the questions which arose was, whether the sureties could be made liable for any moneys paid to the surveyor prior to the execution of the bond; and the court said there is but one ground on which the sureties can be made answerable, and that was on the assumption that the money was still remaining in his hands when the bond was given. And in the case of The United States *v.* Boyd, 15 Peters, 208, the court said it matters not at what time the moneys had been received, if after the appointment of the officer they were held by him in trust for the United States, and so continued to be held at and after the date of the bond. In these cases there was a direct allegation that the money was in the hands of the officer at the date of the bond. In the case now before the court, there is no such direct allegation, and this count is therefore bad on this ground. The third count is also bad for the same reason.

The judgment of the Circuit Court must accordingly be reversed, and the cause sent back for further proceedings.

Mr. Justice McLEAN dissented.

The joint plea of *non est factum* to the first count in the declaration being bad against Linn, is undoubtedly bad against the other defendants. But this point was not raised in the Circuit Court. It was not intended to be raised. On the contrary, the counsel agreed to submit the question under the plea, whether the annexation of the seals by Linn vitiated the bond as against the sureties. And the reason for this was stated in the following entry on the record : "A judgment having been obtained against Linn for the full amount of his defalcation, a judgment on this bond was not asked against him or any of the defendants, unless the jury shall find against all the defendants."

This agreement was treated by the counsel on both sides, in the Circuit Court, as waiving any technical question arising on the pleading. No one could doubt that the bond was good against Linn. And it is equally clear that, technically, the plea was bad for the other defendants, it being bad as to Linn. And it was to avoid any technicality of this kind that the agreement

was entered into. It is less definite than it should have been, but still its object seems to be manifest. That a construction here would be given to the agreement different from that which was given to it by the United States attorney in the Circuit Court, was not expected. His construction is shown from the fact of his not having suggested any objection to the court below arising on the joint plea.

The plea of Joseph Duncan as to the alteration of the bond is held to be bad, because it is not averred that it was altered by the plaintiffs or by their authority. At the same time it is admitted that, on the general issue, the person claiming under the deed must explain any interlineation or alteration upon its face, so as to show the bond is not vitiated. The reason of this is clear. The party having possession of the bond is presumed to have a knowledge of any alteration of it, and is therefore required to explain it. *Prima facie,* any material alteration vitiates the bond.

Now the special plea in this case states a material alteration, by affixing the seals, after the instrument had been approved of by the district judge. The demurrer admits the facts stated in the plea. Does it not follow, then, that the plea is good, if the alteration alleged in it be a material one; such an one as vitiates the instrument unless explained? No rule in pleading is better settled than that a fact which is presumed to be known to the plaintiff, and is not presumed to be within the knowledge of the defendant, the defendant need not aver it in his plea, if he can without the averment set up a *prima facie* defence. Mr. Chitty says, 1 vol. of Plead. 255, "It is also a general rule, that matter which should come more properly from the other side need not be stated. In other words, it is enough for each party to make out his own case or defence. He sufficiently substantiates the charge or answer for the purposes of pleading, if his pleading establish a *prima facie* charge or answer. He is not bound to anticipate, and therefore is not compelled to notice and remove in his declaration or plea every possible exception, answer, or objection which may exist, and with which the adversary may intend to oppose him." Com. Dig. Pleader, c. 81; Plowd. 376; 2 Saund. 62 a, n. 4; 1 Term Rep. 638; 8 Term Rep. 167; Stephen's Pl. 1st ed. 354.

No one can doubt that the alteration averred in the above plea, appearing on the face of the instrument, would vitiate it, unless explained by the holder. And it follows then that the plea stating the fact, which the demurrer admits, must be answered and explained.

The defendant must know whether an instrument which he has executed has been altered in a material part. But he is not presumed to know by whom it has been altered, while it is in the possession of the party who claims under it. If the defendant must aver this, he must prove it; and this would be impossible. But, on the other hand, the person claiming under the instrument, and who has always been in possession of it, may well be presumed to know by whom it has been altered, and, therefore, he, and he only, can explain it. Any other rule would be most unreasonable and contrary to any proper system of pleading.

The rules lately adopted by the courts of England in regard to pleading seem "not to have fallen under the notice of this court." This is to be regretted, as those rules have been published in the late editions of Mr. Chitty on Pleading, and are known to the profession throughout the country.

It is true, as the court say, that intendments are taken against the plea; but intendments must not only be practicable, but reasonable. If a fact in the plea be omitted, which the defendant cannot be presumed to know, and which must be known to the plaintiff, no intendment against the plea can be drawn.

Mr. Stephens, in his Treatise on Pleading, 350, under the head that, "it is not necessary to state matter which would come more properly from the other side," says, "this, which is the ordinary form of the rule, does not fully express its meaning. The meaning is, that it is not necessary to anticipate the answer of the adversary; which, according to Hale, C. J., 'is like leaping before one comes to the stile.' It is sufficient that each pleading should in itself contain a good *prima facie* case, without reference to possible objections not yet urged." "Thus in pleading a devise of land by force of the statute of wills, 32 Hen. 8, c. 1, it is sufficient to allege that such an one was seised of the land in fee, and devised it by his last will, in writing, without alleging that such devisor was of full age. For though the statute provides that wills made by *femes covert*, or persons within age, &c., shall not

be taken to be effectual; yet if the devisor were within age, it is for the other party to show this in his answer, and it need not be denied by anticipation."

· "So where an action of debt was brought upon the statute 21 Hen. 6, against the bailiff of a town for not returning a burgess of that town for the last Parliament, (the words of the statute being that the sheriff shall send his precept to the mayor, and if there be no mayor, then to the bailiff,) the plaintiff declared that the sheriff had made his precept unto the bailiff, without averring that there was no mayor. And after verdict for the plaintiff, this was moved in arrest of judgment. But the court was of opinion clearly, that the declaration was good; for we shall not intend that there was a mayor, except it be showed; if there were one, it should come more properly on the other side."

"Where the matter is such that its affirmation or denial is essential to the apparent or *prima facie* right of the party pleading, there it ought to be affirmed or denied." Now the alteration of the instrument in a material part, after Duncan the defendant had signed it, without his consent or knowledge, did make a *prima facie* case. It made such a case, as, upon the general issue, would have required the plaintiffs to show by whom it was altered. And this shows that the plea is good. It is the same principle whether it arise on the general issue or by special plea. The same order of proof is required. The plaintiffs, therefore, instead of demurring, should have pleaded over, and alleged that the alteration was made by a stranger, and, consequently, that it did not vitiate the instrument.

The plea should have concluded with a verification, and not to the country. But this could only be taken advantage of by special demurrer. This defect is not one of the causes assigned in the demurrer, and, therefore, cannot be objected to.

The second and third counts of the declaration being bad, as ruled by the court, the judgment of the Circuit Court should, on those counts, have been affirmed, and not reversed. Mr. Stephens, in his Pleading, 144, says again, "It is a rule, that on demurrer the court will consider the whole record, and give judgment for the party who, on the whole, appears to be entitled to it." "Thus on demurrer to the replication, if the court think the replication bad, but perceive a substantial fault in the plea, they

will give judgment, not for the defendant, but for the plaintiff, provided the declaration be good; but if the declaration also be bad in substance, then, upon the same principle, judgment would be given for the defendant." Piggot's case, 5 Rep. 29 a; Bates v. Cost, 2 Barn. & Cres. 474.

I believe this case is the first exception to the above rule. Notwithstanding the above defective counts, judgment is given generally against the defendant. It is hoped that this ruling will not establish a precedent in other cases.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of Illinois, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to proceed therein conformably to to the opinion of this court.