THE IND. SCHOOL DIST. OF MONTEZUMA V. McDONALD ET AL.

1. **Public officer:** OFFICIAL BOND: LIABILITY OF SURETIES. The sureties upon the bond of a public officer are not liable for a deficit in a former term, unless the amount of the delinquency is in the hands of the officer when the bond under which their liability attaches is executed.

2. ———: ———: APPLICATION OF FUNDS. Funds received during one term of office cannot be applied in extinguishment of a former delinquency, and that payment of ordinary school orders, out of such funds, was made by the district treasurer, furnishes no exception to the rule.

3. ———: COMPENSATION OF. When the treasurer of a school district uses the funds entrusted to him in his own business, and neither he claimed compensation for his services nor the board of directors awarded it, it was *held*, in an action upon his official bond, that the amount of recovery should not be diminished by an allowance for his services.

*Appeal from Poweshiek District Court.*

THURSDAY, OCTOBER 21.

THIS is an action on the official bond of Angus McDonald, as treasurer of plaintiff, against him and his sureties thereon, for balance of moneys in his hands, which he neglects to pay over. There was a trial by the court, resulting in a judgment for plaintiff, from which the defendants appeal.

*W. R. Lewis*, for appellants.

*A. W. Ballard*, for appellee.

MILLER, CH. J.—The District Court, on the trial, made the following findings of facts and conclusions of law:

1. "The defendant, Angus McDonald, was treasurer of plaintiff from March 20th, 1871, to March 20th, 1872, and again, on re-appointment, from April 1st, 1872, to January 4th, 1873, and gave the bond in suit, signed by defendants, Meyers, Tilton, and Bosley, as his sureties on his qualification for his last term.

2. During both of said terms, as he received money of the district, he did not keep it separate, but put it with his own private funds, and used it in connection with his business; and as orders were presented he paid them out of any money he had on hand.

3. April 1st, 1872, the Board of Directors had a committee of three members examine his accounts for the preceding year, .and made settlement with him, and found a balance in his hands of $388.31. There was no money produced, nor demand made therefor, and he had no money actually on hand at the time. It does not appear that he failed to pay any order drawn upon him during this first term. This balance of $388.31 was carried over and charged to him on his account for the new term.

4. On his resignation, January 4th, 1873, on settlement with him it was found that there was a balance in his hands, including in the account the $388.31, of $661.83; and this sum he has wholly failed to pay over to his successor in office, or any officer or person entitled thereto.

5. He received, during the first term, $3199.08
   and paid out, . . . . . . . 2810.77
                                    ─────────
                                    $388.31

   During the second term, . . $1968.32
   and paid out . . . . . . . . 1694.70
                                    ─────────
                                    $273.62

6. In neither of the settlements was there anything claimed by him, or allowed by the board, as compensation for his services. A reasonable compensation, if he had not had

the use of the money, would have been one per cent. on the whole amount, making $51.67.

7.. April 4th, 1873, these defendants (the sureties) made an offer to allow plaintiff to take judgment against them on said bond for $265.00. Plaintiff refused to accept the offer.

8. At the last term of this court judgment by default was rendered in this case against said McDonald, and his surety, Meyers, for $661.83, and interest thereon at 6 per cent from January 4th, 1873."

### CONCLUSIONS OF LAW.

" I. As the money of the district during each term was used by the treasurer, and not kept separate, and payments of orders during the second term were no more made on account of the money received during that term, than on account of the balance remaining in the treasurer's hands at the commencement of said term, the district had the right to elect to consider so much of the money paid during the last term as being paid on account of such balance as was necessary to satisfy the same; and, therefore, the whole deficit is chargeable to the account of the second term, and the sureties on the bond for that term are liable therefor.

II. The failure to pay over *all* balances of money remaining in his hands at the termination of his office, to his successor in office, or to the persons entitled thereto, was a breach of the conditions of said bond.

III. These defendants are not entitled to any deduction by way of compensation to their principal."

Judgment was accordingly rendered against the defendants for the entire deficit with interest and costs.

In *The County of Mahaska v. Ingalls,* 16 Iowa, 81, which was an action on the official bond of the county treasurer, it was held that sureties on official bonds are not liable for prior delinquencies of their principal. The court there says: " This action was against the sureties of the ' new or additional bond ' of the deceased county treasurer. The bond was not retrospective in its terms.' Consequently, while the sureties would be bound for the public moneys *in the hands of their*

*principal*, at the time of the execution of the bond in suit, although a previous bond then existed with different sureties, and also for money subsequently coming into his hands, yet they would not be bound for his past derelictions of duty or misconduct." Citing, among other cases, *Farrar v. The United States*, 5 Peters, 373, and *The United States v. Linn*, 1 How., 104. In the first of these cases one Rector was appointed surveyor, and commissioned as such on the 13th day. of June, 1823, and his official bond was executed August 7th, 1823. Between the 3d of March and the 4th of June in the same year, there had been paid to him from the treasury the sum of money found by the jury. The court in the opinion holds this language: "We feel no difficulty in affirming that, for any sums paid to Rector prior to the execution of the bond, there is but one ground on which the sureties could be held answerable to the United States, and that is on the assumption that he still held the money in bank or otherwise. If still in his hands he was, up to that time, bailee; but upon the contrary hypothesis, he became a debtor or defaulter to the government, and his offense was already consummated. If intended to cover past dereliction, the bond should have been made retrospective in its terms. The sureties have not undertaken against his past misconduct."

In *The United States v. Linn, supra,* the same doctrine is re-affirmed, holding that a count which avers that an accounting officer received public moneys during his continuance in office is not good as against a surety who became such some time after he entered on his office, there being no allegation that the money received before the surety became such *were in the hands of the officer at the time the defendant became surety,* and were not accounted for afterwards. So also in *The United States v. Boyd*, 15 Pet., 208, the decision is to the same effect. *Bessinger v. Dickerson*, 20 Iowa, 260; *Warren Co. v. Ward*, 21 Ib., 85; and *Thompson v. Dickerson*, 22 Iowa, 360, hold the some doctrine.

The principle established by these cases is, that if the money has been received by the officer prior to the execution of the bond on which the suit is brought, and the money has

been used by the principal to his own use, or so disposed of by him that he does not have it on hand, either in bank or otherwise, this constitutes a dereliction of duty, and that for such dereliction the sureties on his official bond, subsequently executed, are not liable unless the bond is retrospective in its language so as to include prior derelictions of duty. On the other hand, where a public officer, having received public moneys prior to the execution of his official bond, still has such moneys on hand when the bond is executed, the sureties thereon become responsible for the proper disposition thereof.

*1. PUBLIC OFFICER: bond: liability of sureties.*

In this case the court expressly finds that, at the time the committee settled with the treasurer in respect to his receipts and disbursements during his first term of office, the treasurer had no money on hand at the time. It appears by the court's findings that the treasurer mixed the money of the district with his own, paid orders as they were presented from any money he had on hand, and that, when the settlement was had with him on the first day of April, 1872, "he had no money actually on hand," either of his own or belonging to the district. He converted the money to his own use, and had none on hand when these defendants became sureties on the bond for the second term of office. For this default and dereliction these defendants are not liable.

II. It is claimed by counsel for appellee that, since the treasurer paid out more money during his second term of office than was sufficient to cover the deficit at the close of his first term, therefore that deficit has been paid, and the whole deficit now is in the second term. No argument is made or authorities cited supporting this claim. It seems to us to be unsound.

*2. ————: ————: application of funds.*

The undertaking of the sureties is, in effect, to be responsible for all the moneys received by their principal during his term of office, and not for those received by him prior thereto, and not in his hands when they became sureties. Now we have seen that at the expiration of his first term it was found that he had received of the public moneys $388.31 more than he had paid out, and that he had none of this amount on

hand when he entered upon his second term, and gave the bond sued on. These facts fixed the liability of the sureties on the first bond. It would be inequitable and unjust to shift this liability from them, and place it upon the sureties on the second bond, merely because of the payment of ordinary school orders by the treasurer after the giving of the second bond.

III. It is claimed that the court below erred in holding that "these defendants are not entitled to any deduction by way

3. ———: of compensation to their principal." The law
compensa-
tion of. does not fix the compensation of the treasurer of a school district, but it authorizes the board of directors to do so. It is found by the court below that at "neither of the settlements was there anything claimed by him (the treasurer), or allowed by the board as compensation for his services." The board never having fixed the compensation, the treasurer never claiming any, and the fact that the treasurer used the public moneys coming into his hands, even if it be conceded that the court could award compensation to the treasurer without action by the board, which to say the least is doubtful, fully authorized the court below to conclude that the defendants are entitled to no credit on that account. The court virtually considered the use of the public moneys by the treasurer as equivalent to a reasonable compensation for his services, in view of the fact that he was a defaulter. To this we see no reasonable objection.

If the plaintiff will remit the amount of the delinquency existing under the treasurer's first term of office, to-wit: $388.31, and take judgment for the amount of the deficit found at the close of the second year, to-wit: $273.62, with interest from January 4th, 1873, the judgment will be affirmed. Otherwise it will be

REVERSED.