Orlando, by Chapman, Mayor, v. Gooding et al.—Syllabus.

CITY OF ORLANDO, BY F. S. CHAPMAN, AS MAYOR, APPELLANT, VS. C. T. GOODING ET AL., APPEL- LEES.

ALTERATION OF INSTRUMENT—SUIT UPON—PLEADING—ONUS OF PROOF TO EXPLAIN ALTERATION—ADMINISTRATOR OF DECEASED· OBLIGOR CAN NOT BE SUED JOINTLY WITH SURVIVING OBLIGORS.

1. A suit upon a bond, made payable to the mayor of an incorpor- ated city or town and his successors in office, to secure the faithful performance of the duties of its clerk and treasurer, should be brought in the name of the mayor, *for the use* of such city or town.

2. When an instrument is offered in evidence, that is assailed as having been materially and unauthorizedly altered after execu- tion by interlineation or otherwise, if the alteration is in itself suspicious, as, if it appears to be contrary to the probable meaning of the instrument as it stood before the insertion of the alteration; or if it is in a hand-writing different from the body of the instrument, or appears to have been written with different ink—in all such cases, *if the court considers the al- teration suspicious on its face,* the presumption will be that it was an unauthorized alteration after execution, and the *onus* would rest with the party offering the instrument to explain it. On the other hand, if the alteration appears in the same hand- writing with the original instrument, and bears no evidence *on its face* of having been made subsequent to its execution, and especially if it only makes clear what was the evident intention of the parties, the law will presume that it was made in good faith, and before execution; and in the latter cases the *onus* would be cast upon the party alleging an unauthorized altera- tion, to show that it was unauthorized in fact.

3. Where a bond or other obligation with sureties is unauthorizedly altered after execution by a stranger to such instrument with- out the knowledge, sanction, connivance or procurement of the· payee, such alteration, as between the payee and sureties, will not avoid the instrument and release the sureties, but it remains in full force as it stood in its original form prior to its altera-· tion.

4. In order to render a bond or other instrument admissible in evi- dence to sustain a suit thereon, that has been materially and

unauthorizedly altered after execution, under circumstances that do not avoid its obligatory force and effect in its original unaltered form, the declaration must be so framed as to seek recovery thereon in its *original, unaltered* form.

5. The administrator of a deceased obligor can not be jointly sued in the same action with surviving obligors. The form of the judgment against the one is *de bonis testatoris*, and against the others, *de bonis propriis;* two forms of judgment that the law courts can not blend into one.

Appeal from the Circuit Court for Orange county.

The facts in the case are stated in the opinion of the court.

*J. M. Cheney* for Appellant.

*Hammond & Jackson* for Appellees.

TAYLOR, J.:

The city of Orlando, by F. S. Chapman, as its mayor, sued Charles T. Gooding, as principal, James J. Patrick, Nathaniel C. Motley and Mary Sweetapple, as administratrix of the estate of Henry Sweetapple deceased, as sureties, in the Circuit Court of Orange county, for an alleged defalcation of $843.50 by Gooding, upon a bond givien by Gooding as principal, to E. J. Reel, as mayor of the city of Orlando and his successors in office, to secure the faithful performance by Gooding of his duties as clerk and treasurer of said city, and the faithful application of all funds of said city that might come to his hands as such clerk and treasurer. The declaration contains but one count, and seeks to recover upon the following bond attached thereto as the cause of action:

246 SUPREME COURT.

Orlando, by Chapman, Mayor; v. Gooding et al.—Opinion of Court.

STATE OF FLORIDA, } ss.
County of Orange.

Know all men by these presents, that we, Charles T. Gooding, as principal, and J. J. Patrick and H. Sweetapple and N. C. Motley, as sureties, are held and firmly bound unto E. J. Reel, mayor of the city of Orlando, and his successors in office, in the sum of three thousand dollars, as follows: The said Charles T. Gooding, as principal, in the sum of three thousand dollars, the said J. J. Patrick, as surety, in the sum of one thousand dollars, the said H. Sweetapple, as surety, in the sum of one thousand dollars, and the said N. C. Motley, as surety, in the sum of one thousand dollars, for the payment whereof well and truly to be made we hereby bind ourselves—"jointly and severally"—our heirs, executors and administrators firmly by these presents. Signed and sealed the 10th day of November, A. D. 1886. The condition of the above obligation is such that whereas the above bounden Charles T. Gooding has been elected as clerk and *ex officio* treasurer of the city of Orlando, and is about to enter upon the duties of said office, now if the said Charles T. Gooding shall well and truly perform all the duties devolving upon him as such clerk and treasurer of the city of Orlando, and shall faithfully account for all moneys which shall pass into his hands by reason of said office as required by ordinances of the said city of Orlando, or by resolution of the city council, and shall deliver to his successor in office all books, moneys and other property which may belong to said city of Orlando, and which may be in his hands at the expiration of his term of office, then this obligation to be void, else to remain in full force and effect.

JUNE TERM, 1894. 247

Orlando, by Chapman, Mayor, v. Gooding et al.—Opinion of Court.

|  |  |
|---|---|
| C. T. GOODING, | (Seal) |
| J. J. PATRICK, | (Seal) |
| H. SWEETAPPLE, | (Seal) |
| N. C. MOTLEY, | (Seal) |

Signed and sealed in presence of—

A. W. ACREE, M. SILVER,

    As to J. J. Patrick.

S. P. GOODING, M. SILVER,

    As to H. Sweetapple.

E. M. SHEPARD, M. SILVER,

    As to N. C. Motley.

The declaration sought to recover upon the bond in the form in which it is presented above, without any allegation or explanation as to changes, alterations or additions thereto that were made after its execution.

The defendants Patrick and Motley plead to this declaration as follows: 1st. *Non est factum;* 2nd. That after the execution and delivery of said bond by them as sureties, and before the same was accepted by the plaintiff, said bond was materially altered without their knowledge, consent or privity by interlining and inserting the words, "jointly and severally," in the covenant thereof as now set out in the bond which is attached to the declaration herein; and that said alteration was made by the defendant Gooding, or by his procurement or direction, with the knowledge and by the authority, consent or direction of the plaintiff; 3rd. That the plaintiff, by its ordinance duly adopted and approved, without the privity or consent of these defendants, extended the term of office of the principal in said bond, the defendant Charles T. Gooding, as its clerk and treasurer, and provided that he should hold his said office until December, 1887, instead of one year from July 31st, 1886, the term for which he

had been elected, and thereby extended the time in which he was required to render his final account and settlement as such clerk and treasurer; and enlarged, varied and extended the liability and obligation of these defendants as sureties; 4th. That the plaintiff at the time of the commencement of this suit was, and still is, indebted to the defendant Gooding in the sum of $400 for fees due him as clerk from the plaintiff in mayor's court of said city for recording the records, proceedings and ordinances of said city and its council from the 31st of July, 1885, to the 11th day of August, A. D. 1887, which should be allowed by the plaintiff in an accounting between it and said Gooding. That Gooding is insolvent, and, as a reduction of the amount of their liability, they claim that said set-off should be allowed.

The defendant Mary Sweetapple, as administratrix of Henry Sweetapple, deceased, plead: 1st. That the bond sued upon was not the deed of her intestate; 2nd. The same alteration in the bond plead by the other two sureties above; 3rd. The extension by ordinance of the term of office of Gooding, as pleaded by the other two sureties.

These pleas were demurred to by the plaintiff upon various grounds; the demurrer was overruled, and such ruling is assigned as error, but this assignment is not urged or insisted upon here, and we treat it as abandoned.

The principal defendant, Gooding, pleaded a set-off of $601.50 alleged to be due him from the plaintiff city upon an account for work, labor and services performed by him for the plaintiff city as clerk, and for fees to which he was entitled. This plea was demurred to by the plaintiff, and the demurrer was overruled, and such ruling is also assigned as error, but is not .

insisted upon or urged as such here, and we treat it, too, as abandoned. Thereupon issue was joined on all the pleas filed by the defendants. The parties proceeded to trial before a jury.

The plaintiff offered in evidence the original of the bond sued upon, that showed upon its face that the words, "jointly and severally," had been interlined therein. Its introduction was objected to by the defendants upon the ground that it showed upon its face that it had been interlined, and that it became, therefore, the duty of the plaintiff to prove that such interlineation was done, either before its execution or, if done afterwards, that it was by and with the knowledge, sanction and consent of the defendants. The court sustained the objection, to which plaintiff excepted. The plaintiff then introduced an expert in handwritings, who, after examining the bond, testified that the interlined words, "jointly and severally," therein were in the same handwriting and apparently written with the same ink as were the names of the parties written in the body of the bond, and of the several amounts that the sureties bond themselves for, and of the date of the instrument. With this evidence the plaintiff again offered the bond in evidence, but it was again objected to on the ground that the said interlineation therein had not been sufficiently explained. The court again ruled it out, to which the plaintiff excepted. The plaintiff then introduced the defendant Gooding as a witness, who testified that the bond offered in evidence was signed by himself as principal, and by the said sureties, without having the interlined words, "jointly and severally," therein. That after being so signed, it was left with him by the sureties, whereupon he took it to the city attorney, Mr. J. D. Beggs, soon after it was signed. That Mr.

250 SUPREME COURT.

Orlando, by Chapman, Mayor, v. Gooding et al.—Opinion of Court.

Beggs told him the form of it was all right except that the words, "jointly and severally," should appear in the bond, and indicated, by a pencil mark, the place where they should appear, and where they do now appear, and suggested that those words should be written in the bond. He then took the bond to one M. Silver who had witnessed its execution, and told him what Mr. Beggs had said, and asked him to attend to it. That sometime during the same day M. Silver returned the bond to him with the words interlined as they now appear in the bond offered. He took the bond next day to the city council and it was accepted and approved, and he at once assumed the duties of the office. That was all he knew about it. The plaintiff then introduced in evidence the following statement of facts that, by written consent and agreement, was introduced as the evidence of said Silver: "Silver witnessed the signatures of the defendants to the bond sued on, as is shown by said bond, and took the justifications of the sureties thereto. That thereafter, on November 10th, 1886, said Silver, at the request of the defendant Gooding, interlined in the covenant of said bond the words, "jointly and severally." That he, Silver, interlined said words without the authorization of defendants Motley, Patrick or Sweetapple, and not in their presence, and that he did not inform them or either of them while said Gooding was in office as city clerk; nor did either of them, to the knowledge of said Silver, ever acquiesce in said alteration thereof. That the words interlined were suggested by a memorandum made in pencil on the margin thereof in the handwriting of Mr. J. D. Beggs, then city attorney, and the place where said words were to be interlined was also marked in pencil, and the same were thereupon inserted by him as above stated." The plaintiff then

also introduced Mr. J. D. Beggs who testified that on the 10th of November, 1886, he was city attorney for said city of Orlando. That Gooding came to his office and showed him the bond. It was then already executed by the principal and sureties. I examined it and told Gooding that it was all correct in form except that the words "jointly and severally" should appear at the place where they are now interlined. I told him he could have the words written in at the proper place, that I indicated with the lead pencil, and I also wrote the words to be interlined on the margin in pencil. I think, but am not certain, that I also told him he could make the interlineation with the consent of the sureties. I handed him back the bond and he went off with it saying he would fix it. That was the last I ever saw or heard of it again, that I remember of. With this evidence the plaintiff again offered the bond in evidence, but it was again objected to by the defendants on the ground that the evidence showed that it was not entitled to admission in evidence; which objection the court again sustained, refusing to allow said bond to be admitted in evidence, to which ruling the plaintiff excepted. Whereupon the plaintiff entered a nonsuit and appeals here, assigning as error the several rulings of the court refusing to admit said bond in evidence.

The refusal of the court to admit the bond in evidence when it was first offered by the plaintiff, upon the ground that it was the plaintiff's duty first to explain the interlineation apparent on the face thereof, raises the question: Upon whom falls the burden of proof, in the first instance, to account for interlineations or other obvious alteratons in written instruments offered in evidence? This question has received diverse answers by different courts, and four different rules

have been announced as the answer:   (1) That an alteration apparent on the face of the writing raises no presumption either way, but the question is for the jury; (2) that it raises a presumption against the writing, and requires, therefore, some explanation to render it admissible; (3) that it raises such a presumption only when it is *suspicious* on its face, otherwise not; (4) that it is presumed, in the absence of explanation, to have been made before delivery, and therefore requires no explanation in the first instance.   1 Am. & Eng. Ency. of Law, p. 512, and citations.   The last or fourth rule above announced is the one that has been adopted and followed here.   Stewart vs. Preston, 1 Fla., 10; S. C. 44 Am. Dec., 621; Kendrick vs. Latham, 25 Fla., 819, 6 South. Rep., 871.   In the latter case the court says: "In the absence of *evidence to the contrary* (italics ours), an alteration will be presumed to have been made contemporaneously with the execution of the instrument, and properly made, if nothing appears to the contrary."   How, or from whom, or from what *source*, the *evidence to the contrary* is to be made to *appear*, that case does not state, but there is nothing therein that even tends to deny the proposition that the *evidence* necessary to destroy this presumption *may appear, prima pacie, on the face of the paper itself from the alteration made.*   We think, therefore, that the more correct rule in such cases, because more fully stated, is the following from the decision of Judge M'Crary, in Cox vs. Palmer, 1 McCrary (U. S. C. C.), 431:   "If the interlineation is in itself suspicious, as, if it appears to be contrary to the probable meaning of the instrument as it stood before the insertion of the interlined words; or if it is in a handwriting different from the body of the instrument, or appears to have been written with different

ink—in all such cases, if the *court considers the interlineation suspicious on its face*, the presumption will be that it was an unauthorized alteration after execution, and the *onus* would rest with the party offering the instrument to explain it. On the other hand, if the interlineation appears in the same handwriting with the original instrument, and bears no evidence *on its face* of having been made subsequent to the execution of the instrument, and especially if it only makes clear what was the evident intention of the parties, the law will presume that it was made in good faith, and before execution; and in the latter cases the *onus* would be cast upon the party alleging an unauthorized alteration to show that it was unauthorized in fact." The rule thus announced does not conflict with the one adopted heretofore by this court in the cases cited, but amplifies it only. Under this rule, that, we think, is the correct one, the court, in view of the *appearances* of the paper offered, as disclosed by the evidence of the expert in handwritings, should have overruled the *first* objection urged against the admission of the bond, and should have thrown the *onus* of proof to sustain the alleged illegality of the alteration therein upon the defendants who set it up it their pleas as a defense.

We pass now to the *third* and last objection sustained by the court to the admission of the bond in evidence, to the effect that the evidence introduced by the plaintiff in explanation of the interlineation complained of established a legal vitiation of the bond, and showed that it was not entitled to admission in evidence for any purpose. The court was in error here. The evidence, already quoted, of Gooding, Beggs and Silver, shows that the plaintiff, the city of Orlando, for whose benefit the bond was made, had no instrumentality

whatever in the alteration set up as an avoidance of it; that neither it, nor any of its officers, had any knowledge that such an unauthorized alteration had been made therein subsequent to its execution by the defendants. The bond was delivered to and accepted by the city authorities *after* the alteration had been made therein. It appears to have accepted the bond in good faith, and in entire ignorance of the unauthorized change made in it. Without its connivance, sanction, consent or knowledge the alteration was made, according to Gooding's version, by Silver, a stranger to the transaction, of his own motion; and, according to Silver's version, it was made by him (Silver), but at the instigation and suggestion of Gooding, the principal in the bond. In either case, whether it was made by the stranger (Silver) of his own motion, or by him at the instigation or request of Gooding, the principal in the bond, we do not think that the alternation, even if it can be considered a *material* one, made under the circumstances here, will vitiate the bond so as to relieve the sureties thereon from liability thereunder to the city of Orlando, who is shown to be entirely innocent of any instrumentality whatever in the alteration made, and of all connivance therein or knowledge thereof. In Williams vs. Moseley, 2 Fla., 304, where the principal maker of several notes payable to another as guardian for minor heirs, got possession of said notes, as the successor in the guardianship to the payee, and mutilated them by cutting therefrom the names of two sureties thereon, this court held that such alteration or mutilation of said notes, made without the knowledge or consent of the parties beneficially entitled to the proceeds thereof, did not relieve the sureties from liability thereon. In Bigelow & Hoagland vs. Stilphen, 35 Vt., 521, one of the best

considered cases of the many we have examined on the subject, where a note with sureties was unauthorizedly altered, after execution, by the addition of the words, "jointly and severally and with interest," by the agent of the payee to whom it was delivered for the payee by the makers, and before it came to the hands of the payee, but without the knowledge, sanction, connivance or procurement of the payee, the court held that the act of the payee's agent in altering the note was not within the scope of his authority as agent, and did not, therefore, bind the payee, but as to him was the same as the act of a stranger; and, discussing the question of the alteration thus made upon the instrument, the court says: "Clearly, it is not just that a man should be deprived of an honest debt, or have the evidence of it destroyed for all beneficial purposes, in consequence of the misconduct of a stranger, to whose act he did not assent, and of which he had no knowledge. It is not the fact, that an instrument is altered, that makes it void; if it was, an alteration by accident or mistake would have that effect. It is the *intent* that gives the act its character and avoids the instrument, and it is difficult to understand why a man who has done no wrong, nor consented that any should be done, should be punished to the extent of the amount of his demand by having his claim cancelled by operation of law, solely because another has been guilty of an act for which he ought to be punished. Public policy does not require any such rule. Declaring the instrument void in case of alteration has no tendency to deter a stranger from making such alteration. Punishment inflicted upon the innocent has no terror for the guilty, and if such a rule was established, it would by no means follow that when an alteration was made by a stranger, it

would be made for the benefit of the holder. The sole object in making the alteration might to render the instrument void. It might be from motives of friendship to the maker, or enmity to the holder, or from selfishness on the part of the stranger, he expecting thereby to add to the security, or increase the probability of collecting a debt of his own against the maker. We think the rule, as indicated by reason and authority, is, that an alteration of a written instrument by a stranger without authority does not render such instrument void." The note in that case was held to be a good and valid instrument *as originally drawn and executed;* and that the bringing of suit to enforce it in its *altered condition* did not amount to a ratification or adoption of the act of alteration, in the absence of knowledge that such alteration had been made until after suit brought. With the views thus expressed we are in perfect accord, and find them amply sustained by the authorities. United States vs. Linn, 1 How., 104; Hunt vs. Gray, 35 N. J., L., 227; Van Brunt vs. Eoff, 35 Barbour, 501; Boyd vs. McConnell, 29 Tenn., 68; Waring vs. Smythe, 2 Barb. Chy., 119; Evans vs. Williamson, 79 N. C., 86; United States vs. Spaulding, 2 Mason, 478; 1 Greenleaf on Evidence, sec. 566, and citations; 1 Am. & Eng. Ency. of Law, p. 505, and citations. Upon the objection to its admission, as made by the defendants and sustained by the court, the court was in error; but there was another objection to its admission, of which no notice was taken at the trial, that rendered its rejection proper and necessary *under the pleadings*. The plaintiff declares in a single count upon the bond in its *altered condition;* and seeks to *enforce* it in such *altered condition;* there is nothing in the declaration showing or claiming a right of recovery upon the instrument in its *original* form.

as it stood prior to the alteration; there was no proper *allegata* to which the bond would be responsive as proof in its *original unaltered* form, the only form in which the plaintiff, under the proofs, can recover upon it. Had the plaintiff's declaration accounted for the alteration in the bond, showing that it had been done without their authority, consent or knowledge, but in such manner as that the sureties would not be bound *by the alteration*, and had claimed and sought recovery upon it in its *original* and *unaltered* form, then the bond, under the proofs made, should have been admitted. United States vs. Linn, *supra*. Although the point was not raised or noticed in the court below by demurrer, or otherwise, yet we can not refrain from noticing the fact of the improper joinder in this action at law of the administratrix of a deceased party as defendant with the surviving co-obligors upon the cause of action sued upon. This is contrary to settled elementary principles. The one is to be charged *de bonis testatoris*, the others *de bonis propriis*, forms of judgment that the rules of law governing the law courts are not flexible enough to permit them to include in the same judgment. 3 Williams on Executors, p. 1843; 2 Chitty on Pleading, 120. A separate action should have been brought against the administratrix of the deceased surety. We think, too, that the action should have been brought in the name of F. S. Chapman, as mayor of the city of Orlando, *for the use of* said city.

For the reasons herein announced, but not for the reasons upon which the rulings of the court below were based, the rulings appealed from are affirmed.